Joshua Konecky, SBN 182897
Nathan Piller, SBN 300569
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Attorneys for Plaintiff and the proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

EDWARD BOUISSEY and RICHARD HODGES, and on behalf of themselves and all others similarly situated,

        Plaintiffs,

vs.

SWIFT TRANSPORTATION CO., INC. and SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,

        Defendants,

Case No. _____

**CLASS ACTION COMPLAINT**

   **(1) CALIFORNIA LABOR CODE;**

   **(2) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and**

   **(3) CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200, *et seq.***

**DEMAND FOR A JURY TRIAL**

    Plaintiffs, Edward Bouissey and Richard Hodges, by and through their undersigned attorneys, hereby bring this Collective Action Complaint on behalf of all others similarly situated, against Defendants Swift Transportation, Inc. and Swift Transportation Co. of Arizona, LLC ("Swift"), and alleges as follows:

## I.  INTRODUCTION

1.      This is a class action on behalf of Plaintiffs and other similarly situated individuals who have worked for Defendants Swift Transportation, Inc. and Swift Transportation Co. of Arizona, LLC's (collectively, "Defendants" or "Swift") as non-exempt, over-the-road truck drivers in California.

2.      Plaintiffs bring this case to address Swift's systemic denial of minimum wage and compliant meal and rest periods, among other violations of the California Labor Code, Industrial Welfare Commission ("IWC") wage orders, and Unfair Competition Law ("UCL").

3.      Swift is the largest truckload motor shipping carrier, and in fact the largest common carrier of any kind in the United States.  Swift has employed Plaintiffs and thousands of other similarly situated employees in California as over-the-road truck drivers (collectively "Drivers" and/or "the Class").  The Drivers work away from home for weeks on end hauling freight in long-haul semis, either alone, or as part of a two-driver team.

4.      During their tours of duty transporting freight for Swift, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth," a small space equipped with a bunk bed in the truck's cab.

5.      The Drivers work day and night, transporting loads up to and often over a thousand miles. They spend weeks away from home as part of their regular job duties. To maximize productivity and profits, Swift works to keep the trucks moving as much as possible. The more Swift maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time. Swift's Driver Leaders and Planners work to assign Drivers as many miles as possible.  Not surprisingly, the Department of Transportation (DOT) has observed that over-the-road truck drivers like Swift's "work some of the longest hours known in this country." *See* Notice of Proposed Rulemaking; Request for Comments, Department of Transportation, Federal Motor Carrier Safety Administration, Hours of Service of Drivers; Driver Rest and Sleep for Safe Operations, 2000 WL 517560, 65 FR 25540-01, at 25548.

6.      Plaintiffs Edward Bouissey and Richard Hodges began their job with Swift working in two-driver teams that collectively hauled freight for 20 or more hours a day over the course of several weeks. During this time, they managed only a few hours of sleep per night in the truck's cramped "sleeper berth," typically while the truck itself was in motion, being driven by a team member. After transitioning from team to "solo" driver status, they continued to work around the clock hauling freight, performing various non-driving tasks (such as trip inspections, washing the trailer, taking the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks), and remaining responsible for the security of the load and subject to Swift's control even when the truck was stopped.  Between the 20 or more hours per day spent driving, riding in a moving truck, performing non-driving tasks, and remaining under Swift's control while confined to the truck's sleeper berth, unable to use the time effectively for their own purposes, the Plaintiffs and other similarly situated Drivers regularly worked more than 100 hours per week.

7.      The Drivers' time is logged in the truck's electronic system during each hour of every 24 hour period as one of either: "driving," "on-duty, not driving," "off-duty," or "sleeper berth." Swift defines these categories based on the Department of Transportation (DOT) safety regulations.

8.      Swift's policy and practice is to compensate Drivers with either: (1) a per-mile piece rate that only covers time spent driving, or (2) a modest hourly rate for time logged as "driving" and for time logged as "on duty, not driving," for DOT safety purposes.  Swift does not pay its Drivers for time logged as "off duty" or "sleeper berth," nor does it pay its piece-rate earning Drivers for the time they spend performing non-driving work that is, by definition, not paid separately and apart from the per-mile piece rate (even when such tasks are logged as "on-duty").

9.      Swift defines compensable time according to the DOT regulations rather than the California Labor Code.  However, the DOT regulations do not define compensable work time. The California Labor Code does define compensable work time. While Swift does not pay for any time logged as "off duty" or "sleeper berth" for DOT safety purposes, the Labor Code makes much of this unpaid time compensable.  As a result, the Drivers are paid for only a fraction of the work they

1  perform and time during which they are subject to the control of Swift, which amounts to over 100
2  hours per week.

3        10.     The unpaid work is made up, principally, of two components: (1) the time Drivers are
4  confined to a the small "sleeper berth" of a truck while under the control of Swift and in service of
5  Swift's objectives; and (2) the time spent performing non-driving tasks at the direction of Swift.

6        11.     Unpaid Sleeper Berth Time: Time during which employees are subject to the control
7  of the employer and are unable to use the time effectively for their own purposes is compensable
8  under California law. *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).  Indeed, "an
9  employee who is subject to an employer's control does not have to be working during that time to be
10  compensated." *Id.* at 582.  For the reasons explained below and herein, the Drivers are subject to the
11  control of Swift during the time they are confined to the truck's sleeper berth and are not free to use
12  this time for their own purposes.

13        12.     The DOT's safety regulations require drivers who have already been driving for 11
14  hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again.  By
15  having the Drivers attempt to rest in the truck's cramped "sleeper berth" for their mandatory 10-hour
16  non-driving periods, Swift can have the truck move as continuously as possible, while still
17  complying with the DOT's "hours of service" safety regulations.

18        13.     For example, many of Swift's Drivers, including Plaintiffs, have worked in a "team"
19  configuration whereby one team member drives while the other attempts to rest in the small "sleeper
20  berth." By having the drivers switch off in the "team configuration," Swift can have the truck move
21  continuously, without stopping for 10 hours.  In turn, the team configuration maximizes efficiency
22  for Swift by enabling it to meet the tight delivery deadlines it promises to its customers. Team
23  Drivers are forced to attempt to rest in the truck's cramped sleeper berth while the truck is moving.
24  The Drivers cannot, of course, get out and do what they want during this time; they are subject to
25  Swift's control and are in the sleeper berth for Swift's benefit during such time.

26        14.     When the Drivers work in a solo capacity, and stop the truck for their mandatory 10-
27  hour non-driving periods, they are still confined to the immediate area of the truck, cannot use the

28

time effectively for their own purposes, and are under Swift's control during such time.

15.     Swift mandates that Drivers spend their mandatory 10-hour non-driving periods in the sleeper berth, rather than in a motel or other accommodation. Swift's Driver Handbook articulates Swift's policy that staying in motels is not permitted unless the truck breaks down, no other truck is available, and repairs take longer than 24 hours, and further warns Drivers that "[d]eviation from assigned work schedule" and "leaving the job or work area without Driver Leader's approval" are "prohibited."

16.     The Drivers also are responsible for the security of the loads they are transporting, even during these 10-hour non-driving periods. For instance, the Handbook warns that for many loads, Drivers may not "leave the truck unattended for any reason," including "being checked into a hotel," and must "remain in the truck." Swift also prohibits Drivers from consuming alcohol during these 10-hour periods and from having even sealed alcoholic beverage containers on stationary trucks.  Swift also equips each truck with a "DriveCam," which monitors Drivers while they are in the truck.

17.     The places where Drivers may stop for their mandatory 10-hour non-driving periods are prescribed by Swift according to the necessities of the dispatch, including the delivery deadline, destination, and most efficient route thereto. The timing of the stops is irregular and dictated by the necessities of the dispatch. Swift penalizes Drivers for late deliveries and other "service failures" occasioned by departing from the most efficient route and timing of non-driving periods, up to and including termination.  Wherever they stop, the locations are away from home, and often lacking in even basic facilities such as restaurants, grocery stores, laundry, or showers.

18.     Whether the truck is moving or stationary, the time the Drivers spend in the sleeper berth is subject to the control of Swift. It also is primarily for Swift's benefit because it lets Drivers resume hauling freight for Swift at the earliest possible time. This in turn allows the trucks to move as efficiently as possible and maximizes the amount of freight Swift can deliver to its customers in the shortest amount of time.

Class Action Complaint
*Bouissey, et al v. Swift Transportation, Inc.*

19.    <u>Unpaid Non-Driving Work</u>: Swift also fails to fully compensate the Drivers for time spent performing non-driving work at its behest, including but not limited to performing pre- and post-trip truck inspections, other roadside inspections, washing the trailer, fueling, tending to truck breakdowns and maintenance issues, bringing trucks through weigh scales, and remaining in a standby capacity for freight transports to be made available, among other tasks.

20.    Drivers also are required to perform various tasks even while logged as "off duty," including but not limited to assisting their team members, studying Swift's required educational materials, adjusting axles at weigh scales, coordinating with shippers and delivery agents, and fueling, among other tasks.

21.    For Swift's per-mile, piece-rate earners, Swift's policies constitute a per se violation of the California Labor Code. California Labor Code § 226.2 provides that "[e]mployees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation." Nonetheless, Swift's piece rate earning Drivers are paid only for driving, and not separately for any of the other work they perform, or for any of the time they must spend attempting to rest in the truck's sleeper berth.

22.    As a result of these policies and practices, Swift has failed to compensate Plaintiffs and its other Drivers for all their hours worked. Indeed, during many workweeks, Swift has required and/or suffered and permitted Plaintiff and its other Drivers to work so many hours without compensation that their effective hourly rates dip below the state minimum wages of $9.00, $10.00, and $11.00 per hour in place during the relevant time period.

23.    <u>Noncompliant Meal and Rest Breaks</u>: Nor do the Drivers receive timely and compliant off-duty meal and rest periods, whether during the time they are in the sleeper berth, or all the other time they are out on the road, subject to the control of Swift.

24.    The only thing Swift does to "provide" meal periods is to have the Drivers abide by DOT safety regulations, which merely require a single 30-minute break after 8 hours of driving.

25.    This policy flatly violates the Labor Code and applicable Wage Order, which require that employers provide a meal period *by the end of the fifth hour of work*, and *another by the end of*

*the tenth hour of work.* Swift also equates breaks to "off duty" as defined by the DOT, rather than applicable wage and hour law.  For example, even when the drivers are logged as "off duty" or "sleeper berth" for DOT safety purposes, they are not provided with an off-duty meal break because they still are under Swift's control. By definition, meal periods cannot be "off duty" or compliant, under California law, if the employee's movement is constrained, which it is while in the small sleeper berth, in a moving truck, and/or required to be near and responsible for the truck.

26.    Swift also does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. The Labor Code and Wage Order require that employees be completely relieved of duty and not subject to interruption for at least ten minutes, for every four hours of work or major fraction thereof. Again, Swift's only policy as to breaks of any kind is to have Drivers comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving. Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint while in the sleeper berth.

27.    Plaintiffs, on behalf of themselves and on behalf of all members of the Class, bring this action pursuant to Labor Code §§ 201-203, 226.2, 226.3, 226.7, 226.8, 400-410, 510, 512, 1182, 1174, 1194, 1197, and 1197.1; and California Code of Regulations, Title 8 §11090 §§ 7 & 11-12 (Wage Order No. 9). Plaintiffs challenge Defendants' policies of (1) failing to pay Plaintiffs and proposed Class members minimum wage; (2) denying Plaintiff and the Class full compensation for all hours worked; (3) failing to provide, authorize, permit and/or make available meal and rest periods to Plaintiff and the Class as required by California law; (4) failing to timely pay Plaintiffs and the Class full wages upon termination or resignation; and (5) failing to provide Plaintiff and the Class with accurate, itemized wage statements. Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the California Labor Code and the applicable IWC Wage Orders.

28.    Plaintiffs, on behalf of themselves and all others similarly situated, also bring this action pursuant to Business & Professions Code §§ 17200-17208, for unfair competition due to

1  Defendants' unlawful violations of the Labor Code and IWC Wage Orders. Plaintiffs, on behalf of

2  themselves and all others similarly situated, seek declaratory and injunctive relief, including

3  restitution under §17203.

4      29.    Plaintiffs seek compensation, damages, penalties, and interest to the full extent

5  permitted by the California Labor Code and Industrial Welfare Commission Wage ("IWC") Wage

6  Orders.

7      30.    Plaintiffs, on behalf of themselves and all others similarly situated, also requests

8  reasonable attorneys' fees and costs pursuant to, inter alia, Labor Code §§ 225.5, 226, 226.7, 558,

9  1194, 1197; and Code of Civil Procedure § 1021.5.

10                              **II. PARTIES**

11     31.    Plaintiffs and proposed Class members are current and former employees of

12  Defendants in California who worked as non-exempt Drivers during the time period four years

13  before the filing of this complaint, through resolution of this action.

14     32.    Plaintiff Edward Bouissey is an individual over the age of eighteen, and is a resident

15  of California, in Mendocino County. Plaintiff Bouissey was employed by Swift as a truck driver in

16  various locations in California, including in this Judicial District, from approximately February 2015

17  to September 2015. Plaintiff Bouissey was paid hourly, while working as a team truck driver for

18  Swift, from approximately February 2015 to March 2015. Thereafter, Plaintiff Bouissey was paid a

19  per-mile piece rate, while working as a solo truck driver for Swift, up until September 2015. As a

20  truck driver for Swift, Plaintiff regularly hauled freight for Swift in the Bay Area, including in

21  Oakland and San Francisco.

22     33.    Plaintiff Richard Hodges is an individual over the age of eighteen, and is a resident of

23  California. Plaintiff Hodges was employed by Swift as a truck driver in various locations in

24  California, from approximately November 2015 to June 2016. Plaintiff Hodges was paid hourly,

25  while working as a team truck driver for Swift, from approximately November 2015 to January

26  2016. Thereafter, Plaintiff Hodges was paid a per-mile piece rate, while working as a solo truck

27  driver for Swift, up until he left Swift in approximately June 2016.

28

34.    Swift Transportation Co. of Arizona, LLC is a limited liability partnership that does business in the State of California and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in California and nationwide, including in this Judicial District.    Defendant Swift Transportation Co. of Arizona, LLC is headquartered, and is a resident of Arizona.

35.    Swift Transportation Co., Inc. is corporation that does business in the State of California and nationwide, and at all relevant times has been engaged in the business of long-haul trucking, logistics, and ground transportation in California and nationwide, including in this Judicial District.  Defendant Swift Transportation Co., Inc. is resident of Arizona.

36.    Throughout this Complaint, any reference to "Swift," "Defendant," or "Defendants" is intended to refer to all Defendants jointly.

37.    At all relevant times, Defendants have done business under the laws of California, have had places of business in California, and have employed Class members in this Judicial District.  Defendants are "persons" as defined in Labor Code § 18 and Business and Professions Code § 17201.  Defendants also are "employers" as that term is used in the Labor Code and the IWC Orders regulating wages, hours, and working conditions.

### III.  JURISDICTION

38.    The Court has jurisdiction under 28 U.S.C. § 1332(a)(1), because the amount in controversy in this action exceeds $75,000, exclusive of interests and costs, and because the parties are residents of different states.

39.    The Court has jurisdiction over Defendants because they are businesses authorized to do business in the State of California and are registered with the California Secretary of State. Defendants do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avail themselves of the California market through the advertising, marketing and sale of goods and services, to render the exercise of jurisdiction over Defendants by the California court consistent with traditional notions of fair play and substantial justice.

40.    Venue is proper under 28 U.S.C. §1391, because Defendants employ Class members

and transact business in this Judicial District, a substantial part of the acts and/or omissions giving rise to the claims occurred in this Judicial District, and Defendants have places of business in this Judicial District.

## IV. FACTUAL ALLEGATIONS

41.     Swift is a truckload motor shipping carrier operating more than 23,000 trucks. It is the largest common carrier in the United States, and boasts more than $4 billion in revenue.

42.     Swift has employed Plaintiffs and thousands of other over-the-road truck drivers in California. The Drivers work away from home for weeks on end driving long-haul trucks, either alone, or as part of a two-driver team. They spend their time hauling freight for Swift's customers, conducting pre- and post-trip inspections, washing the trailers, fueling the tractors, taking the truck through weigh scales, and conducting business with delivery agents, among other tasks.

43.     During their tours of duty transporting freight for Swift, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth." The sleeper berth is a small space with a bunk bed in the truck's cab.

44.     The Drivers work day and night, transporting loads up to and often over a thousand miles and overnight, while hauling freight either as part of a two-driver team or as a solo driver. They spend weeks away from home at a time as part of their job.

45.     To maximize productivity and profits, Swift works to keep the trucks moving as much as possible. The more Swift maximizes its drivers' work hours, the more loads its trucks can transport in a shorter amount of time. Swift's Driver Leaders and Planners work to assign drivers as many miles as possible.  Swift uses software programs purposed to minimize driver downtime, increase utilization of the trucks, maximize driving hours, and optimize Drivers' schedules to let them transport loads as efficiently as possible and to move more quickly from load to load.

46.     Plaintiffs Edward Bouissey and Richard Hodges worked in two-driver teams that collectively hauled freight for 20 or more hours a day over the course of several weeks at the beginning of their employment with Swift. They managed only a few hours of sleep per night in the

truck's cramped "sleeper berth," typically while the truck was in motion and being driven by a team member.

47.     As solo drivers, Plaintiffs Bouissey and Hodges continued to work around the clock hauling freight, performing various non-driving tasks (such as trip inspections, bringing the truck through weigh scales, working with delivery agents, fueling, and completing paperwork, among numerous other tasks), and remaining responsible for the security of the load while confined to the truck's sleeper berth, even when the truck was stopped.

48.     Between the 20 or more hours per day spent driving, riding in a moving truck, performing non-driving tasks, and remaining confined to the truck's sleeper berth while subject to Swift's control and for Swift's benefit, the Plaintiffs and other similarly situated Drivers have regularly worked more than 100 hours per week.

49.     The Drivers' time is logged in the truck's electronic system during each hour of every 24 hour period as one of either: "driving," "on-duty, not driving," "off-duty," or "sleeper berth."

50.     Swift's policy and practice is to compensate Drivers with either: (1) a per-mile piece rate that only covers time spent driving, or (2) a modest hourly rate for time logged as "driving" and "on duty, not driving," for DOT safety purposes.  Thus, Swift does not pay any of its Drivers for any time logged as "off duty" or "sleeper berth," nor does it pay its piece-rate earning Drivers for the time they spend performing various non-driving tasks, such as pre- and post-trip inspections, fueling, and weighing, among other tasks (even when such tasks are logged as "on-duty" on the DOT log).

51.     Swift defines compensable time according to the DOT regulations rather than the California Labor Code.  However, the DOT regulations do not define compensable work time. The California Labor Code does define compensable work time. While Swift does not pay for any time put on the DOT log as "off duty" or "sleeper berth" for DOT safety purposes, the Labor Code makes much of this unpaid time compensable.  As a result, the Drivers are paid for only a fraction of the work they perform, despite working up to and over 100 hours per week.

52.    The unpaid work is made up, principally, of two components: (1) the time Drivers are confined to a small "sleeper berth" of a truck while under the control of Swift and in service of Swift's objectives; and (2) the time spent performing non-driving tasks at the direction of Swift.

53.    <u>Unpaid Sleeper Berth Time</u>: Time during which employees are subject to the control of the employer and are unable to use the time effectively for their own purposes is compensable under California law. *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).    Indeed, "an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Id.* at 582.  For the reasons explained below, the Drivers are subject to the control of Swift during the time they are confined to the truck's sleeper berth and are not free to use this time for their own purposes.

54.    The DOT's safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" and/or "sleeper berth" before driving again. By having the drivers attempt to rest in the truck's cramped "sleeper berth" for their mandatory 10-hour non-driving periods, Swift can have the truck move as continuously as possible, while still complying with the DOT's "hours of service" safety regulations.

55.    For example, many of Swift's Drivers work in a "team" configuration whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having the drivers switch off in the "team configuration," Swift can have the truck move continuously (save for restroom breaks, and other short stops), without stopping for 10 hours.   In turn, the "team" configuration maximizes efficiency for Swift by enabling it to meet the tight delivery deadlines it promises to its customers. These Drivers are forced to attempt to rest in the truck's cramped sleeper berth *while the truck is moving*. While in the "sleeper berth" of a moving truck, the Drivers cannot, of course, get out and do what they want; they are subject to Swift's control and in fact are waiting in a workplace prescribed by Swift, for Swift's benefit, during such time.

56.    Even when the Drivers work in a solo capacity, and therefore stop the truck for their mandatory 10-hour non-driving periods, they are confined to the immediate area of the truck, cannot use the time effectively for their own purposes, and are under Swift's control during such time.

These 10-hour non-driving periods are not leisure time; they are compensable under applicable law, except Swift does not pay the Drivers for it.

57.    Swift mandates that Drivers spend their mandatory 10-hour non-driving periods in the sleeper berth, rather than in a motel or other accommodation. Swift's Driver Handbook articulates Swift's policy that it will not pay for motels unless the truck breaks down, no other truck is available, and repairs take longer than 24 hours, and warns Drivers that "[d]eviation from assigned work schedule" and "leaving the job or work area without Driver Leader's approval" are "prohibited."

58.    During these 10-hour non-driving periods, the Drivers are responsible for the security of the loads they are transporting. For instance, the Handbook warns that for many loads, Drivers may not "leave the truck unattended for any reason," including "being checked into a hotel," and must "remain in the truck." Swift also prohibits Drivers from consuming alcohol during these 10-hour periods and from having even sealed alcoholic beverage containers on stationary trucks.  And, Swift equips each truck with a "DriveCam," which monitors Drivers while they are in the truck.

59.    The places where Drivers may stop for their mandatory 10-hour non-driving periods are prescribed by Swift according to the necessities of the dispatch, including the delivery deadline, destination, and most efficient route thereto. Indeed, Swift specifically requires the Drivers to adhere to a "trip plan" whereby they may stop the truck for 10-hour non-driving periods only at locations that fall on the precise route mandated by the dispatch, and only at times that will maximize the efficiency of the transport (*i.e.* just as a Driver reaches his or her DOT limit of 11 hours of driving per day).  Swift penalizes Drivers for late deliveries and other "service failures" occasioned by departing from the most efficient route and timing of non-driving periods, up to and including termination.  If a Driver is running out of available hours on his or her DOT log, he or she will have to stop at the closest safe location, regardless of whether it has facilities.  Wherever they stop, the location is away from home, and often lacking in even basic facilities such as restaurants, grocery stores, laundry, or showers. The Drivers also are on tight deadlines that preclude them from departing from the immediate area of the stop or from lingering there for longer than 10 hours.

60.     Whether the truck is moving or stationary, the time the Drivers spend in the sleeper berth is primarily for Swift's benefit because it lets Drivers resume hauling freight for Swift at the earliest possible time. This in turn allows the trucks to move as efficiently as possible and maximizes the amount of freight Swift can deliver to its customers in the shortest amount of time.

61.     <u>Unpaid Non-Driving Work</u>: Swift also fails to fully compensate the Drivers for time spent performing specific tasks at its behest, including but not limited to performing pre- and post-trip truck inspections, roadside inspections, fueling, tending to truck breakdowns and maintenance issues, weighing freight, and remaining in a standby capacity for freight transports to be made available, among other tasks.

62.     Drivers also are required to perform various tasks even while logged as "off duty," including but not limited to assisting their team members, studying Swift's required educational materials, adjusting axles at weigh scales, coordinating with shippers and delivery agents, and fueling, among other tasks.

63.     For Swift's per-mile, piece-rate earners, Swift's policies constitute a per se violation of the California Labor Code. California Labor Code § 226.2 provides that "[e]mployees shall be compensated for rest and recovery periods and other nonproductive time separate from any piece-rate compensation." Nonetheless, Swift's piece rate earning Drivers are paid only for driving, and not separately for any of the other work they perform, or for any of the time they must spend attempting to rest in the truck's sleeper berth.

64.     <u>Noncompliant Meal and Rest Breaks</u>: Nor do the Drivers receive timely and compliant off-duty meal and rest periods, whether during the time they are in the sleeper berth, or all the other time they are out on the road, subject to the control of Swift.

65.     The only thing Swift does to "provide" meal periods is to have the Drivers abide by DOT regulations, which merely require a single 30-minute break after 8 hours of driving.

66.     This policy is deficient in several respects. First, it flatly violates the Labor Code and applicable Wage Order, which require that employers provide a meal period *by the end of the fifth hour of work*, and *another by the end of the tenth hour of work*. Second, Swift does not apply the

Labor Code's definition of "off duty" when providing even this single break, but rather the different DOT definition. Under applicable wage and hour law, Drivers are not provided any off-duty meal breaks while they are confined to the sleeper berth for 10 or more hours at a time, because they are under Swift's control during such time. By definition, meal periods cannot be "off duty" or compliant, under California law, if the employee's movement is constrained, which it is while in the small sleeper berth. Third, Swift does not completely relieve the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of non-driving time. Indeed, the Drivers are required and/or are subject to having to perform various non-diving tasks during such time.

67.    Swift also does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. The Labor Code and Wage Order require that employees be completely relieved of duty and not subject to interruption for at least ten minutes, for every fourth hour of work or major fraction thereof. Again, Swift's only policy as to breaks of any kind is to have Drivers comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving. Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not free from physical constraint while in the sleeper berth. In addition, the Drivers are required to, and/or subject to being interrupted to perform non-diving tasks during such time.

68.    As a result of these policies and practices, Swift has failed to compensate Plaintiffs and its other Drivers for all their hours worked and failed to provide compliant meal and rest periods. During many workweeks, Swift has required and/or suffered and permitted Plaintiff and its other Drivers to work so many hours without compensation that their effective hourly rates have dipped below the state minimum wages of $9.00, $10.00, and $11.00 per hour that have been in place during the applicable time period.

## V. CLASS ACTION ALLEGATIONS

69.    *Proposed Class Definition*. Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). The Class that Plaintiffs seek to represent are composed of and defined as follows:

"All over-the-road truck drivers who have driven a truck for Defendants in California at any time beginning four years before the filing of this Complaint until the date of class notice." (the "Class")

70.     **Community of Interest**.  This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because the proposed Class is easily ascertainable and there is a well-defined community interest in the litigation:

a.  *Numerosity*.  Defendants have employed thousands of Drivers in California from 2014 through the present.  Class members are therefore far too numerous to be individually joined in this lawsuit.

b.  *Common Questions of Law and/or Fact*.  Common questions of law and/or fact exist as to the members of the Class and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the Class.  The common questions include the following:

i.  Whether Defendants have suffered and permitted the Drivers to work off-the-clock, without compensation;

ii.  Whether Plaintiffs are subject to Defendants' control during their 10 or more hour non-driving periods;

iii.  Whether Plaintiffs are subject to Defendants control during the time they must spend in the trucks' sleeper berths;

iv.  Whether Defendants owe the Drivers minimum wages;

v.  Whether Defendants owe the Drivers straight time wages;

vi.  Whether Defendants have denied the Drivers wages for work activities that are not compensated separate and apart from their per-mile piece rates;

vii.  Whether Defendants have denied the Drivers wages for work activities that are not compensated by their hourly rates;

viii.  Whether Defendants have failed to provide the Drivers an opportunity to take off-duty meal periods as required by applicable law;

ix. Whether Defendants have failed to authorize and permit rest periods as required by applicable law;

x. Whether the paychecks provided to the Drivers in connection with their compensation contain all the elements mandated for accurate itemized wage statements under Cal. Labor Code § 226(a);

xi. Whether Drivers who had their employment relationship with Defendants terminated are entitled to penalty wages for Defendants' failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship;

xii. Whether Defendants' policies and practices have resulted in violation of one or more of the Labor Code Provisions cited herein;

xiii. Whether Defendants' policies and practices are unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code §§17200, et seq.;

xiv. The injunctive and/or monetary relief to which Plaintiff and the Class may be entitled as a result of the violations alleged herein.

c. *Typicality*. Plaintiffs' claims are typical of the claims of the Class. Defendants' common course of conduct in denying the Drivers compensation for time spent in the truck's sleeper berth and other time during which they are subject to Defendants' control, and for failing to compensate for work tasks that are not compensated by Defendants' per-mile piece rate and/or Defendants' hourly pay scheme has caused Plaintiffs and the proposed Class to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the proposed Class.

d. *Adequacy of Representation*. Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action

vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

e. *Superiority of Class Action*. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Furthermore, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court, and avoids the problem of inconsistent judgments.

f. *Appropriateness of Injunctive or Declaratory Relief*. Final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief may be properly applied to the Class as a whole.

## FIRST CAUSE OF ACTION
### Failure to Pay for All Hours Worked in Violation of
### California Labor Code §§201, 202, 204, and 221-223

71. Plaintiffs reallege and incorporate by reference the above paragraphs as though fully set forth below.

72. California Labor Code §200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

73. California Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

74. California Labor Code §204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer

1    as the regular paydays."

2        75.    California Labor Code §§221-223 prohibit employers from withholding and

3    deducting wages, or otherwise artificially lowering the wage scale of an employee.

4        76.    As explained above, Defendants have maintained and continue to maintain a policy of

5    denying the Drivers any compensation for time in the truck's cramped "sleeper berth," even though

6    the Class members—including Plaintiffs Hodges and Bouissey—have been under Defendants'

7    control while waiting in the truck's sleeper berth for Swift's benefit. Defendants also have failed to

8    fully compensate Plaintiff and the other Class members for time spent performing tasks other than

9    driving, including but not limited to performing pre- and post-trip truck inspections, fueling,

10   bringing the truck through weigh scales, and coordinating with delivery agents (among other tasks),

11   as well as for all for the extensive time they must spend in the truck's sleeper berth without pay.

12       77.    Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the

13   straight time wages to which they are entitled under the law. As explained above, Plaintiffs and

14   members of the Class frequently have worked time for which they are not compensated at their

15   regular rates of pay, as determined by the Industrial Welfare Commission.

16       78.    Accordingly, Defendants have artificially reduced Plaintiffs' and its other Drivers'

17   pay rates by denying them compensation for time spent on non-driving tasks and time during which

18   they are under Defendants' control while in the sleeper berth of a moving truck, primarily for

19   Defendants' benefit.

20       79.    As a proximate result of these violations, Defendants have damaged Plaintiffs and the

21   Class in amounts to be determined according to proof at trial.

22       80.    Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other

23   members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid

24   every pay period.

25       81.    Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid

26   compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under

27   applicable law set forth below.

28

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wages**
**California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1; IWC Wage Order No. 9**

82.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

83.     During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and required that the Class members receive the minimum wage for all hours worked at a rate not less than nine dollars ($9.00) per hour from July 1, 2014 to December 31, 2015; at a rate not less than ten dollars ($10.00) per hour from January 1, 2016 to December 31, 2017; and at a rate not less than eleven dollars ($11.00) per hour commencing on January 1, 2018.

84.     The Class members, including Plaintiffs Bouissey and Hodges, have regularly worked around the clock on multi-day trips away from home, hauling freight for Swift. They have worked tirelessly throughout the day and night to comply with Swift's policies and meet its expectations, including to keep freight moving as constantly as possible and to meet the tight deadlines Swift has promised to its customers. As discussed above, Class members are not even able to go home for the night when on assignment for Swift; they have to attempt to sleep in the truck's sleeper berth, even when the truck is in motion and being driven by a co-driver.

85.     The Drivers are not paid at all—much less at the statutory minimum wage—for the extensive time they spend confined to the truck's cramped "sleeper berth," even though the Class members—including Plaintiffs Bouissey and Hodges—have been under Defendants' control while they wait in the truck's sleeper berth entirely for Swift's benefit. This time is compensable as a matter of law.

86.     Nor are they fully compensated for time spent performing other non-driving tasks.

87.     Defendants' unlawful compensation scheme has denied Plaintiffs and the Class the minimum wages to which they are entitled under the law. As explained above, Plaintiffs and members of the Class frequently have worked time for which they are not compensated even at the statutory minimum wage, as determined by the Industrial Welfare Commission.

88.    Labor Code §1194.2 provides that, in any action under §1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

89.    Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiff and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

90.    As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiffs and members of the Class have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

**THIRD CAUSE OF ACTION**
**Failure to Provide Meal Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and 512; and Cal.Code Regs., Title 8 §11090 ¶¶ 7 & 11**

91.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

92.    California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, ¶ 11 require Defendants to provide meal periods to Plaintiffs and members of the proposed Class.  California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, § 11 prohibit employers from employing an employee for more than five hours without a meal period no less than  thirty (30) minutes and for more than ten (10) hours without a second meal period.  Unless the employee is relieved of all duty during the thirty (30) minute meal period, the employee is considered "on-duty" and the meal or rest period is counted as time worked.

93.    Defendants have not provided Plaintiffs and the other Class members with meal periods during which they are completely relieved of duty for at least thirty (30) minutes by the fifth hour of work and again by the tenth hour of work.

94.     Rather, Swift merely has the Drivers abide by Department of Transportation (DOT) regulations, which require only a single 30 minute break after 8 hours of driving.  This policy is facially deficient under the Labor Code and Wage Order, which require that employers provide a meal period by the end of the fifth hour of work, and another by the end of the tenth hour of work. Swift's policy also applies the DOT definition of "off duty," rather than the more protective definition under applicable wage and hour law. For example, Plaintiffs and other Class members are without any meal period during the time they are confined to the sleeper berth for ten or more hours at a time.

95.     Defendants' policy also is deficient in that Swift does not completely relieve the Drivers of any duty, and leaves them subject to interruption even during these 30 minutes of DOT-required non-driving time.  The Drivers are required to, and or subject to being called upon to perform various non-diving tasks during such time.

96.     Defendants have failed to perform their obligations to provide Plaintiffs and Class Members off-duty meal periods by the end of the fifth hour of work and a second meal period by the end of the tenth hour of work.

97.     Defendants also have failed to pay Plaintiffs and Class Members one (1) hour of pay for each off-duty meal period that they have been denied.  Defendants' conduct described herein violates California Labor Code §§226.7 and 512 and Title 8 of the California Code of Regulations §11090.

98.     Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

99.     Therefore, Plaintiffs and members of the putative Class are entitled to compensation for Defendants' failure to provide meal periods, plus interest, expenses, and costs of suit pursuant to California Labor Code §§226.7(b) and Title 8 of the California Code of Regulations §11090.

//

//

**FOURTH CAUSE OF ACTION**
**Failure to Provide Rest Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and Cal.Code Regs., Title 8 § 11090 ¶ 12**

100.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as though fully set forth herein.

101.    California Labor Code §226.7 and Title 8 of the California Code of Regulations § 11090, ¶ 12 requires Defendants to authorize and permit paid, off-duty rest periods to Plaintiffs and members of the proposed Class at the rate of ten minutes net rest time per four hours or major fraction thereof.

102.    Swift does nothing to authorize and permit rest periods that are in compliance with the Labor Code and the Wage Order. Swift's only policy as to breaks of any kind is to have Drivers comply with the DOT regulations, which do not provide for breaks, aside from the 30-minutes of non-driving time after 8 hours of driving.

103.    Even if Drivers manage to take some kind of "break" from time to time, these "breaks" are not duty free or free from the possibility of interruption.  Nor are they paid.  The Drivers are required to, and/or subject to being required to perform non-diving tasks during such time.

104.    Under both California Labor Code § 226.7 and Title 8 of the California Code of Regulations §11090, ¶ 12, an employer must pay an employee who was denied a required rest period one (1) hour of pay at the employee's regular rate of compensation for each workday that the employer did not provide the compliant, paid and off-duty rest period.

105.    At all relevant times herein, Defendants have failed to perform their obligations to authorize and permit Plaintiffs and Class Members to take rest periods as set forth above.

106.    Defendants also failed to pay Plaintiffs and Class Members one (1) hour of pay for each rest period they have been denied.  Defendants' conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the California Code of Regulations §11090.

107.    Pursuant to Labor Code §218.6 or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay

1   period.

2       108.    Therefore, Plaintiffs and members of the putative Class are entitled to compensation

3   for Defendants' failure to authorize and permit rest periods, plus interest, and costs of suit pursuant

4   to California Labor Code §§ 226.7(b), and Title 8 of the California Code of Regulations § 11090.

5                              **FIFTH CAUSE OF ACTION**
                          **Failure to Keep Accurate Payroll Records**
6                          **California Labor Code §§ 1174 & 1174.5**

7       109.    Plaintiffs hereby reallege and incorporates by reference the allegations set forth above

8   as if fully set forth herein.

9       110.    California Labor Code §1174 requires Defendants to maintain payroll records

10  showing the actual hours worked daily by Plaintiffs and the Class members.

11      111.    Defendants knowingly, intentionally, and willfully have failed to maintain payroll

12  records showing the actual hours worked by Plaintiffs and the Class members as required by

13  California Labor Code §1174 and in violation of §1174.5. As a direct result of Defendants' failure

14  to maintain payroll records, Plaintiffs and the Class members have suffered actual economic harm as

15  they have been precluded from accurately monitoring the number of hours they have worked and

16  thus seeking all accrued minimum wages and agreed upon wages. As a direct and proximate result

17  of the unlawful acts and/or omissions of Defendants, Plaintiffs and the Class members are entitled to

18  recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys'

19  fees, and costs of suit.

20                             **SIXTH CAUSE OF ACTION**
                          **Failure to Furnish Accurate Wage Statements**
21                          **California Labor Code § 226**

22      112.    Plaintiffs hereby reallege and incorporate by reference the paragraphs above as

23  though fully set forth herein.

24      113.    California Labor Code §226(a) provides that every employer must furnish each

25  employee with an accurate itemized wage statement, in writing, showing nine pieces of information,

26  including: 1) gross wages earned; 2) total hours worked by the employee; 3) the number of piece-

27

28

---

24
Class Action Complaint
*Bouissey, et al v. Swift Transportation, Inc.*

rate units earned and any applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of the period for which the employee is paid; 7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number; 8) the name and address of the legal entity that is the employer; and 9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

114.    California Labor Code §226(e)(1) provides that an employee suffering an injury as a result of a knowing and intentional failure to provide a statement accurately itemizing the information set forth in Labor Code §226(a), then the employee is entitled to recover the greater of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

115.    California Labor Code §226(e)(2) provides that an employee is deemed to suffer injury if the employer fails to provide wages statements that show, among other items, the amount of the gross wages or net wages paid to the employee during the pay period, the total hours worked by the employee during the pay period, all deductions, and all applicable hourly rates in effect during the pay period. Plaintiffs' and the Class members' wage statements do not comply with these requirements, including because they do not show the accurate amount of gross or net wages and deductions, and do not show all applicable hourly rates.  Accordingly, Plaintiffs and the Class members have suffered injury as a result of Defendants' violations of California Labor Code §226.

116.    Defendants intentionally and willfully failed to furnish Plaintiffs and Class members with timely, accurate, itemized statements showing total hours worked, gross wages earned, net wages earned, and the applicable hourly rates as required by California Labor Code §226(a).

117.    Plaintiffs and the Class members have been injured by Defendants' violation of California Labor Code §226(a) because they have been denied their legal right to receive and their protected interest in receiving, accurate, itemized wage statements, and could not promptly and easily ascertain from the wage statement alone their total hours worked, gross wages earned, net

wages earned, and the applicable hourly rates, among other required information.

118.    Plaintiffs and Class Members have also been injured as a result of having to bring this action to obtain correct wage information following Defendants' refusal to comply with many requirements of the California Labor Code.  As a result, Defendants are liable to Plaintiffs and Class members, for the amounts, penalties, attorneys' fees, and costs of suit provided by California Labor Code §226(e).

119.    Pursuant to Labor Code §218.6 and/or Civil Code §3287(a), Plaintiffs and other members of the Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

120.    Plaintiffs, on behalf of themselves and the proposed Class, request an assessment of penalties as stated herein and other relief as described below.

121.    Plaintiffs, on behalf of themselves and all others similarly situated, seek all unpaid compensation, damages, penalties, interest and attorneys' fees and costs, recoverable under applicable law set forth below.

### SEVENTH CAUSE OF ACTION
**Waiting Time Penalties**
**California Labor Code §§ 201-203**

122.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

123.    California Labor Code §201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.  California Labor Code §202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two (72) hours of that employee's termination of employment by resignation. California Labor Code §203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under California Labor Code §§201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

124.    Plaintiffs Bouissey and Hodges, and members of the Class have left their employment with Defendants during the statutory period.  Defendants willfully failed and refused, and continue to willfully fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully deducted from compensation to Plaintiffs and to all other proposed Class Members whose employment with Defendants have ended or been terminated at any point during the statutory period.  As a result, Defendants are liable to Plaintiffs and other formerly employed members of the proposed Class for waiting time penalties, together with interest thereon, attorneys' fees, and costs of suit, under California Labor Code §203.

125.    Plaintiffs, on behalf of the proposed Class, request waiting time penalties pursuant to California Labor Code §203 and as described below.

## EIGHTH CAUSE OF ACTION
### Unfair Competition and Unlawful Business Practices
### California Business and Professions Code §§ 17200, et seq.

126.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

127.    California Business and Professions Code §17200 defines unfair competition to include, "unlawful, unfair or fraudulent business practices."

128.    Plaintiffs and all proposed Class members are "persons" within the meaning of Business and Professions Code §17204, who have suffered injury in fact and have lost money or property as a result of Defendants' unfair competition.

129.    Defendants have been committing, and continue to commit, acts of unfair competition by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

      i.    violations of California Labor Code §§ 1197, 1197.1, 1198;

      ii.    violations of California Labor Code § 510;

      iii.    violations of California Labor Code §§ 226.7 and 512;

       iv.    violations of California Code Regulations, Title 8 § 11090 ¶¶ 7, 11, and 12;

       v.    violations of California Labor Code §§ 204, 221-223 and 400-410;

       vi.    violations of California Labor Code §§ 1174 and 1174.5;

       vii.    violations of California Labor Code §226; and

       viii.    violations of California Labor Code §§ 201-202.

130.    Plaintiffs reserve the right to identify additional unfair and unlawful practices by Defendants as further investigation and discovery warrants.

131.    As a result of its unlawful and/or unfair acts, Defendants have reaped and continue to reap unfair benefits and illegal profits at the expense of Plaintiffs and proposed Class members. Defendants' unlawful and/or unfair conduct has also enabled Defendants to gain an unfair competitive advantage over law-abiding employers and competitors. Defendants must be enjoined from this activity and made to restore to Plaintiffs and proposed Class members their wrongfully withheld wages, interest thereon, and related statutory penalties, pursuant to Business and Professions Code §§ 17202 and 17203.

132.    Business and Professions Code §17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices.

133.    Plaintiffs seek a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to himself and members of the proposed Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

134.    Plaintiffs, on behalf of themselves and the proposed Class, request restitution of unpaid wages, wage premiums, injunctive relief and other relief as described below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

    a.    That the Court determine that this action may be maintained as a class action under

Federal Rule of Civil Procedure 23;

b.    For an order appointing Plaintiffs as representatives of the Class

c.    For an order appointing Plaintiffs' attorneys as Class Counsel;

d.    That the Court find that Defendants have been in violation of applicable provisions of the California Labor Code and IWC Wage Order No. 9 by failing to pay each member of the proposed Class for all hours worked, including minimum wages and wages at the designated rate;

e.    That the Court find that Defendants have been in violation of California Labor Code §§226.7 and 512 by failing to provide Plaintiffs and members of the Class with meal periods and therefore owe compensation under California Labor Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶¶ 7 and 11;

f.    That the Court find that Defendants have been in violation of California Labor Code §§226.7 by failing to authorize and permit rest periods for Plaintiffs and members of the Class, and therefore owe compensation under California Labor Code §226.7(b) with respect to violations of California Code of Regulations, Title 8 §11090, ¶ 12;

g.    That the Court find that Defendants have violated the recordkeeping provisions of California Labor Code §§ 1174 and 1174.5 as to Plaintiffs and the Class;

h.    That the Court find that Defendants have been in violation of California Labor Code § 226 by failing to timely furnish Plaintiffs and members of the Class with itemized statements accurately showing the total hours worked, vacation benefits, bonus benefits, and wages earned by each of them during each pay period;

i.    That the Court find that Defendants have been in violation of California Labor Code §§201 and 202 and therefore owe waiting time penalties under California Labor Code §203 for willful failure to pay all compensation owed at the time of termination of employment to Plaintiffs and Class members;

j.    That the Court find that Defendants have committed unfair and unlawful business practices, in violation of California Business and Professions Code §17200, *et seq.*,

1      by their violations of the Labor Code and Wage Orders as described above;

2    k.    That the Court order an accounting of the payroll records and/or driver logs to

3      determine what restitution is owed and to whom, pursuant to California Business and

4      Professions Code §17203;

5    l.    That the Court award to Plaintiffs and the proposed Class members compensation and

6      restitution for all wages owed, including minimum wages, wages at the designated

7      rate, for the value of all meal and rest periods that were not provided or authorized by

8      Defendants, and for all reasonable and necessary business expenses incurred by

9      Drivers;

10    m.    Prejudgment interest under Cal. Lab. C. § 218.6; Cal Civ. C. §§ 3287, 3289, and other

11      applicable law;

12    n.    That the Court award to Plaintiffs and the proposed Class members statutory and/or

13      civil penalties as provided herein, including but not limited to Labor Code §§ 203,

14      210, 226, and California Business and Professions Code § 17202;

15    o.    That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant

16      to Labor Code §§ 203, 225.5, 226, 1194, 1197, Code of Civil Procedure § 1021.5,

17      and/or other applicable law;

18    p.    Any and all other applicable statutory penalties, as provided by law; and

19    q.    For such other and further relief as this Court deems just and proper.

20

21                Respectfully submitted,

22 DATED:  November 26, 2018      **SCHNEIDER WALLACE COTTRELL**

23                                      **KONECKY WOTKYNS**

24

25        By:

26                      Nathan B. Piller

                       Attorneys for Plaintiff

27

28

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

DATED:   November 26, 2018          **SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS**


By: _____
          Nathan B. Piller
          Attorneys for Plaintiff