SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
PAUL S. COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
ROBERT MUSSIG, Cal. Bar No. 240369
rmussig@sheppardmullin.com
JOHN D. ELLIS, Cal. Bar No. 269221
jellis@sheppardmullin.com
NINA MONTAZERI, Cal. Bar No. 329440
nmontazeri@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:   415.434.3947

Attorneys for Defendant SWIFT
TRANSPORTATION CO. OF ARIZONA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BOUISSEY and RICHARD HODGES<br><br>Plaintiffs,<br><br>vs.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, et al.,<br><br>Defendants, | Case No. 2:19-cv-03203-VAP (KKx)<br><br>Assigned to the Honorable Virginia Phillips<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Information:<br><br>Date: February 27, 2023<br>Time: 2:00 p.m.<br>Judge: Virginia Phillips<br>Crtrm.: 8A |

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................1

II.   FACTS AND PROCEDURAL HISTORY .........................................................3

    A.   The Parties .................................................................................3

    B.   Swift's Policies Regarding Hours of Service and Driver Pay.....................3

    C.   High-Value Loads and High-Theft Areas .........................................7

    D.   Plaintiffs' Allegations and Class Certification....................................8

III.   SUMMARY JUDGMENT STANDARDS ..........................................10

IV.   ARGUMENT......................................................................................12

    A.   Plaintiffs Must Prove That Swift Exercised Control Over Class Members' Off-Duty And Sleeper Berth Time..............................13

    B.   Over-the-Road Drivers' Home Time Is Not Compensable.....................15

    C.   Swift's Policies Governing The Use of Its Trucks Is Not Control ............17

    D.   Alleged Practical Hardships Not Imposed By Swift Do Not Constitute Control .......20

    E.   Swift's Policies on Alcohol Consumption Are Not Control .....................22

    F.   Swift Policies Regarding High-Value Loads and High-Theft Areas Are Not Control And At Most apply to 3% of Loads ...........................23

    G.   The Other Rules Cited By Plaintiffs Do Not Constitute Control...............25

V.   CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Augustus v. ABM Sec. Servs., Inc.*
   2 Cal. 5th 257 (2016) ...........................................................................20

*Ayala v. U.S Xpress Enterprises, Inc.*
   2020 WL 4760177 (C.D. Cal. 2020) ..................................................20

*Blodgett v. FAF, Inc.*
   446 F. Supp. 3d 320 (E.D. Tenn. 2020)..............................................15

*Bono Enterprises, Inc. v. Bradshaw*
   32 Cal. App. 4th 968 (1995) ..............................................................21

*Cazares v. Host Int'l, Inc.*
   2021 WL 3667227 (9th Cir. 2021) ............................................... 21, 23

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986).................................................................... 10, 12

*Cole v. CRST, Inc.*
   2017 WL 1234215 (C.D. Cal. 2017) ...................................................11

*Devereaux v. Abbey*
   263 F.3d 1070 (9th Cir. 2001) ............................................................11

*Ewald v. Lane*
   104 F.2d 222 (D.C. Cir. 1939) ...........................................................19

*Frlekin v. Apple Inc.*
   8 Cal. 5th 1038 (2020) ................................................... 13, 14, 20

*Gomez v. Lincare, Inc.*
   173 Cal. App. 4th 508 (2009) .............................................................22

*Griffin v. Sachs Elec. Co.*
   390 F. Supp. 3d 1070 (N.D. Cal. 2019)....................................... 17, 18, 19

*Kennedy v. LTI Trucking Servs., Inc.*
   2019 WL 4394539 (E.D. Mo. 2019)....................................................15

*Maldonado v. Epsilon Plastics, Inc.*
    22 Cal. App. 5th 1308 (2018) ...............................................................11

*Mendiola v. CPS Sec. Sols., Inc.*
    60 Cal. 4th 833 (2015) ........................................................................14

*Nance v. May Trucking Co.*
    2014 WL 199136 (D. Or. 2014) ...........................................................15

*Nance v. May Trucking Co.*
    685 F. App'x 602 (9th Cir. 2017) ........................................................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*
    782 F. Supp. 2d 1047 (C.D. Cal. 2011) ...............................................11

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*
    210 F.3d 1099 (9th Cir. 2000) .............................................................11

*In re Oracle Corp. Secs. Litig.*
    627 F.3d 376 (9th Cir. 2010) ...............................................................11

*Osman v. Tatitlek Support Servs., Inc.*
    2017 WL 945024 (C.D. Cal. 2017) ......................................... 20, 21, 23

*Overton v. Walt Disney Co.*
    136 Cal. App. 4th 263 (2006) .......................................................19, 20

*Petrone v. Werner Enterprises, Inc.*
    2017 WL 510884 (D. Neb. 2017) .........................................................15

*Ridgeway v. Walmart Inc*
    946 F.3d 1066 (9th Cir. 2020) .......................................................13, 22

*Seymore v. Metson Marine, Inc.*
    194 Cal. App. 4th 361 (2011) ...............................................................14

*Taylor v. Cox Commc'ns California, LLC*
    283 F. Supp. 3d 881 (C.D. Cal. 2017) ..................................................12

<u>Statutes</u>

49 U.S.C. § 113(f) ..................................................................................3

Regulations and Rules

29 C.F.R. § 785.21 ........................................................................15

29 C.F.R. § 785.21 ........................................................................15

29 C.F.R. § 785.22 ................................................................... 14, 15

29 C.F.R § 785.22(a)....................................................................14

29 C.F.R. § 785.41 ........................................................................15

49 C.F.R. pt. 395 ............................................................................3

49 C.F.R. § 392.5 ..........................................................................22

49 C.F.R. § 395.2 ................................................................... 3, 4, 23

83 FR 26377 ................................................................................4, 5

Fed. R. Civ. P. 56(a) ................................................................. 10, 11

Fed. R. Civ. P. 56(f) .....................................................................11

# I.    INTRODUCTION

Defendant Swift Transportation is entitled to summary judgment on Plaintiffs' class claims because the policies that the Court determined present common issues for purposes of class certification do not constitute control over the class members' off-duty and sleeper berth time as a matter of law and consequently all of Plaintiffs' claims fail.

Plaintiffs allege that Swift's employee over-the-road drivers are engaged in compensable work time 24 hours a day, 7 days a week, for purposes of California law when they are out on the road making deliveries, no matter where they are or what they are doing. Plaintiffs' primary theory prior to class certification was that Swift's policies and practices restrict drivers' freedom to leave the vicinity of their truck during time logged as "off-duty" or "sleeper berth." The Court found that this theory of liability could <u>not</u> be certified because (a) Swift's written policies do <u>not</u> confine drivers to their vehicles and (b) class member testimony conflicted as to Swift's actual practices. Thus, individual inquiries would be necessary to determine liability. Therefore, at this stage, Plaintiffs' theory that Swift's drivers were engaged in compensable work at all times because they were confined to their trucks <u>cannot</u> be considered as a basis for class-wide liability.

Although the Court rejected class certification as to Plaintiffs' main theory of the case, the Court found that the requirements of Rule 23 were satisfied with respect to Plaintiffs' allegations that Swift's policies regarding "high-value loads" (which comprise less than 3% of all loads driven by the class) and "high-theft areas" (of which there is only one in California) resulted in control over class members' off-duty and sleeper berth time. The Court also found that whether certain miscellaneous Swift policies, such as requiring drivers to get permission to have a pet or passenger in Swift's trucks, and not drink alcohol prior to driving, constitute control over class members' off-duty and sleeper berth time presents a common issue amenable

to class treatment.

The Court's certification order further limited Plaintiffs' unpaid wage claims to "work hours logged in California" by "truck drivers employed by Swift who are California residents." Because Plaintiffs' wage claims are limited to time spent in California by California residents, class members will frequently be at home during their off-duty time.  Plaintiffs do not contend that off-duty time during drivers' "home time" is compensable, and therefore Plaintiffs must show that off-duty time is both not "home time" and under Swift's control.

The Court should grant summary judgment to Swift because the policies that the Court identified as "common" in granting class certification do not result in "control" over the class members' off-duty and sleeper berth time as a matter of law.  While Swift's policies regarding high-value loads and high-theft areas state that drivers may not leave their vehicles "unattended," a truck is not "unattended" if it is left at an approved secure facility—and there are at least twenty such facilities throughout California.  Therefore, drivers are free to leave their trucks and pursue activities of their choosing during off-duty time, and spend the night at locations other than their trucks' sleeper berths, *including their California residence*.

The other policies that Plaintiffs rely on are almost all restrictions on how drivers may use Swift's property – i.e., its trucks – not how drivers may use their off-duty time.  California law is clear that such general worksite rules governing the use of the employer's property do not constitute control and do not make all time spent on the employer's property compensable. The only policy Plaintiffs cite that concerns activity that does not take place on one of Swift's trucks is a rule that drivers may not consume alcohol within twelve hours of coming on-duty. This minor restriction, which exists for obvious safety reasons and to comply with federal regulations, does not rise to the level of control and does not render drivers' off-duty and sleeper-berth time compensable as a matter of law, particularly for drivers who do not drink

alcohol.  See Dkt. 88-2 at 19:13-25; 33:6-10; 51:21-52:2; 128:13-14.

For these reasons, the Court should grant Swift's motion for summary judgment.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    **The Parties**

Swift is a commercial motor carrier headquartered in Phoenix, Arizona.  Dkt. 88-1 ¶¶ 2, 4.  Swift employs thousands of over-the-road truck drivers throughout the United States.  *Id.* ¶ 4.  Over-the-road drivers often spend extended periods of time away from their residence and designated home terminal making deliveries.  *Id.*  These drivers often spend weeks, or even months at a time, out on the road and away from their state of residence.  *Id.*  When over-the-road drivers conclude a series of trips, they receive "home time," which could consist of as little as one night or as much as several non-working days during which the drivers spend time at home and which is logged as off-duty.  Statement of Undisputed Facts (SUF) # 5.

Plaintiffs Bouissey and Hodges are former over-the-road employee drivers for Swift who were assigned to a terminal in California.  Tillman Dec. ¶ 2.  Bouissey worked for Swift from February 2015 through July 2015, and Hodges worked for Swift from December 2015 through July 2016.  *Id.*

### B.    **Swift's Policies Regarding Hours of Service and Driver Pay**

The Federal Motor Carrier Safety Administration (FMCSA) is an arm of the Department of Transportation that regulates (among other things) the hours of service of truck drivers in interstate commerce.  49 U.S.C. § 113(f); 49 C.F.R. Part 395.  All of Swift's over-the-road drivers are covered by the FMCSA.  SUF # 1.  The FMCSA's regulations governing drivers of property carrying vehicles recognize four primary duty statuses: driving, on-duty (not driving), off-duty, and sleeper berth.  49 C.F.R. § 395.2; Dkt. 88-1 ¶ 10.  There is also a personal conveyance status that may be used when a driver operates a truck for personal, non-work

1   related transportation.  83 FR 26377;  Dkt. 88-1 ¶ 10.

2        Throughout the class period, Swift's over-the-road employee drivers either residing the

3   California or assigned to a California home terminal were paid the applicable minimum wage

4   rate multiplied by all time recorded as driving and on-duty (not driving) in their hours of service

5   logs.  Dkt. 88-1 ¶ 5, Ex. 1.  In addition to this hourly pay, drivers are paid "production pay"

6   based on the estimated number of miles between the starting and ending zip codes of a

7   completed trip.  *Id.*

8        "Driving" time is defined as "all time spent at the driving controls of a commercial motor

9   vehicle in operation."  49 C.F.R. § 395.2.  "On-duty (not driving)" time means "all time from

10  the time a driver begins to work or is required to be in readiness to work until the time the

11  driver is relieved from work and all responsibility for performing work."  *Id.*  Time that is

12  neither driving time nor on-duty (not driving) time is recorded as "off-duty," or "sleeper berth"

13  if the driver is resting in a sleeper berth.  *Id.*  Swift's driver handbooks and other policies in

14  use during the applicable time period incorporate the same definitions of driving and on-duty

15  (not driving) time, and clarify that time is only to be recorded as off-duty or sleeper berth if the

16  driver is "relieved of all responsibility and not required to be in work readiness."  SUF # 7.

17  Home time is recorded is off-duty on driver logs, but there are no records of whether any given

18  segment of off-duty time is home time or other off-duty time.  SUF # 6.

19       Swift has only permitted its employee drivers to use the personal conveyance duty status

20  since 2020.  SUF # 9; Dkt. 88-1 ¶ 22, Exs. 7-8.  The personal conveyance status can only be

21  recorded when an employee driver uses their Swift truck for personal use.  *Id.*; 83 FR 26377.

22  Personal conveyance cannot be used for driving that advances a load to its destination or

23  advances the interests of Swift in any way.  SUF # 10.   Drivers do not need permission from

24  Swift to use the personal conveyance status.  SUF # 11.  Time recorded as personal conveyance

does not count toward a driver's on-duty (not driving) and driving limits.  SUF # 9

Swift's drivers are also required to carry an "off-duty authorization form" in their vehicles that further clarifies that, when a driver is logged in an off-duty status, "**you are relieved from responsibility from your vehicle and cargo.**"  SUF # 13.  Once the driver's truck is parked and secure, drivers are free to leave the premises where their truck is parked to pursue activities of their own choosing while logged as off-duty.  SUF # 14.  Many class members have testified that they are familiar with the off-duty authorization form and declare that they carry it in their truck in a permit book.  *Id.*

Swift's policies, as reflected in driver handbooks, orientation materials, and forms provided to drivers, describe and require strict compliance with the FMCSA's hours of service rules.  SUF # 2; Dkt. 88-1 ¶ 9, Exs. 2, 4, 9 at SWIFT306, Ex. 10 at SWIFT273, Ex. 11.  Failing to comply with the FMCSA's hours of service regulations or falsifying hours of service logs is grounds for discipline and termination.  *Id.*  Swift's drivers are instructed to log all of their time truthfully and accurately in accordance with Swift's policies and the FMCSA's regulations. *Id.*  Drivers are able to correct their logs if there are ever any errors, and several class members testified to making corrections.  SUF # 3.  Drivers are automatically put into driving status if they drive over a certain minimum speed.  SUF # 4.

Many class members acknowledge that the foregoing accurately reflects Swift's policies and expectations, as well as the driver's actual practices.  SUF # 1-18.  Class member Albert Panuco, for example, states that "When I'm logged as on off-duty, I am not working or expected to be on-call or in work readiness.  **Off-duty is your personal time to do what you want**.  If you are working during off-duty time, Swift would probably fire you on the spot." Dkt. 88-3 at p. 76 ¶ 5. Other class members also report there are no restrictions on how they spend their time when in the off-duty status.  Dkt. 88-3 at p. 61 ¶ 6 ("Off-duty time is my time

to do what I want."); Dkt. 88-3 at p. 105 ¶ 6 ("Off-duty means you have no responsibilities and no readiness. That is your time, even if the load is going to be late.").

Class members further agreed that sleeper berth time is time in which they are relieved of all responsibility and are not required to be in work readiness. SUF # 16. The only difference between the sleeper berth and the off-duty statuses is that drivers must be physically in the sleeper berth to record time as sleeper berth. *Id.* However, drivers are not required to use their truck's sleeper berth and can simply record time as off-duty when not inside the sleeper berth. *Id.*; Dkt. 88-1 ¶¶ 13-15, Exs. 2-3. When in the sleeper berth or off-duty status, class members engage in personal activities such as reading, watching tv or movies, stretching, going for a walk, working out, eating, taking a shower, laundry, and browsing the internet. SUF # 17. They are not permitted to work or be in readiness to work. SUF # 16. They are not, for example, required to make themselves available to Swift for telephone or messages sent through the truck's onboard tablet. SUF # 18. They can and do turn off their phones and tablet. *Id.*

Class members are free to leave their vehicle during time recorded as off-duty and they are <u>not</u> required to attend to the truck or load. SUF # 12-15; Dkt. 88-3 at pp. 113-114 ¶ 9 ("When I am off duty, I can leave my truck unattended and don't need to keep an eye on it. I've never heard of any rule that a driver always has to attend to their truck and must keep it in sight. That's not true."); Dkt 88-3 at p. 68 ¶ 8 ("Swift does not have any rule that I can never leave my truck unattended while out on the road or always have it [in] my sight."). Class members in fact left the vicinity of their trucks while on the road for extended periods of time without consequence consistent with Swift's policies. SUF # 15. Class member David Harris declares "I will leave my truck to go into a truck stop to eat, go to a restaurant, take a shower, or go to the bathroom. Sometimes during off-duty time I will lock up the truck, get out and

1  walk away for up to half a mile. I can't see the truck when I do this." Dkt. 88-3 at pp. 113-

2  114 ¶ 9. Others would go home, go to a mall, do grocery shopping, eat at a restaurant, or go

3  to the gym or exercise. Dkt. 88-3 at p. 311 ¶ 5 (gym); Dkt. 88-3 at p. 121 ¶ 6 (mall); Dkt. 88-

4  3 at p. 302 ¶ 6 (shopping for food and exercising); Dkt. 88-3 at p. 255 ¶ 7 (groceries).

5       C.   **High-Value Loads and High-Theft Areas**

6       Only a small fraction of the loads Swift delivers for its customers are designated "high-

7  value loads." SUF # 20. Since February 1, 2019, <u>only 3%</u> of all loads delivered by the certified

8  driver class were high-value loads. *Id.*; Dkt. 88-1 ¶ 19. Class member declarants agree that

9  high-value loads are very rare, and several of the class members never drove one at all. SUF

10  # 20-21. According to Swift's records, almost half of the certified class never once drove a

11  high-value load during the period February 1, 2019 to the present. SUF # 21; Dkt. 88-1 ¶ 19.

12  Indeed, neither Plaintiff ever drove a high value load for Swift. SUF # 21-22; Dkt. 94 ¶ 2.

13       Some of Swift's written policies impose some additional rules when a driver is carrying

14  a high-value load. Dkt. 88-1 ¶ 20. An older policy, which has not been in effect since March

15  2020, states that high-value loads should not be left "unattended." *Id.* However, this does not

16  mean that a driver cannot leave his or her truck when they are carrying a high-value load. A

17  load is not "unattended" when it is left at a secure facility, and drivers are able to stop at secure

18  facilities and leave their vehicles when carrying high-value loads. *Id.*; SUF # 24-25. Class

19  members confirm this understanding. SUF # 24. Swift's current high-value load policy, in

20  effect since March 2020, does <u>not</u> include this "unattended" language and instead provides

21  guidance on where and how to park to go off-duty. SUF # 26-27; Dkt. 88-1 ¶ 20, Ex. 5; Dkt.

22  88-2 at p. 72 ¶ 20 ("Even if driving a high value [load], I can stop and leave it unattended if I

23  am [at] a secure location like a truck stop or Swift terminal and put on the king pin lock.").

24       Swift also designates a few regions in the country as "high-theft areas." SUF # 28.

During the relevant time period, these areas were 1) in and around Los Angeles, California; 2) in and around Augusta, Georgia, and 3) an area in southern Florida.  *Id.*  Plaintiffs also identify written policies stating that a loaded trailer should not be left unattended in a high-theft area. But as with high-value loads, a load is not "unattended" when left at a secure facility, and class members agree they were able to leave their trucks at secure facilities in high-theft areas.  SUF # 29; Dkt. 88-1 ¶ 21.  Some class members also rarely or never actually drove in a high-theft area, and the areas are small enough that drivers can and do drive through them without ever stopping to go off-duty.  SUF # 29; see also Dkt. 88-2 at 34:19-23; 87:4-12; Dkt. 88-1 at p. 78 ¶ 16; Dkt. 88-1 at p. 93 ¶ 12 .  Trips are planned such that drivers will have an opportunity to stop outside of high-theft areas or at a secure facility.  SUF # 31; Dkt. 88-1 ¶ 21.  Thus, there is rarely, if ever, a time when a driver would need to be in off-duty status in California in a high theft area, at least not for any extended period of time.

### D.  <u>Plaintiffs' Allegations and Class Certification</u>

Plaintiffs filed this action on November 26, 2018, and alleged several claims for relief arising under California law based on allegations that Swift did not pay employee drivers for <u>all</u> time logged as off-duty or sleeper berth in their federal hours of service logs.  Dkt. 1. Plaintiffs further alleged that Swift failed to provide California meal and rest periods, and that Swift's mileage based compensation system failed to pay drivers for non-driving worktime logged as on-duty (not driving) in the hours of service logs.  *Id.*  On October 7, 2021, the Court dismissed Plaintiffs' meal and rest period claims pursuant to a stipulation.  Dkt. 78.

Plaintiffs moved for class certification on April 22, 2022.  Dkt. 79.  Plaintiffs sought certification of a class of "[a]ll individuals employed by [Swift] as an over-the-road truck driver at any time from November 26, 2014 until the date class notice is provided," subject to several conditions that were later modified by the Court.  *Id.* at p. 1.  Plaintiffs' motion requested

certification of their claims for relief <u>only</u> "arising from time subject to Swift's control logged as 'sleeper berth' or 'off duty" on Driver's Department of Department of Transportation (DOT) driver logs." *Id.* at p. 2.  Plaintiffs' motion stated that they "do not seek certification of the above causes of action insofar as they rely on the theory of liability that Defendants' per-mile piece rate failed to compensate for discrete non-driving tasks…" *Id.*  Thus, Plaintiffs do not dispute, for purposes of their class claims, that all time recorded as on-duty (not driving) or driving is lawfully compensated.  Plaintiffs' claims are limited to allegations that all time recorded as sleeper berth or off-duty is compensable.

On September 27, 2022, the Court granted Plaintiffs' motion for class certification, but on narrower grounds than Plaintiffs had asserted.  Dkt. 96.  Plaintiffs' motion relied on allegations of a uniform policy or practice prohibiting employee drivers from leaving their truck and its immediate area without approval. Dkt. 79-1 at p. 19.  The Court found that Swift's written policies "clarify that Swift's drivers are free to leave the vicinity of their trucks during off duty or sleeper berth time," and that the "conflicting declarations" filed by the parties "evidence the lack of a uniform policy prohibiting drivers from leaving their trucks without approval." Dkt. 96 at pp. 9-11.  The Court therefore found that because "Plaintiffs have not provided 'significant proof' that Swift operated under the policy they describe, **the legality of such a policy does not constitute a common question capable of providing class-wide relief**." *Id.* at p. 11 (emphasis added).

Although the Court rejected Plaintiffs' contention that Swift had a common policy or practice confining drivers to the vicinity of their vehicles at all times, the Court found that Swift's policies regarding "high-value loads" and "high-theft areas," and "other restrictions" found in miscellaneous policies satisfied the conditions of Rule 23. Dkt. 96 at pp. 13-21.  The miscellaneous policies the Court relied upon relied on include policies prohibiting drivers from

detaching a loaded trailer, policies regarding use of the personal conveyance duty status, policies requiring that certain conditions be met for drivers to bring passengers or pets aboard Swift's trucks, and policies prohibiting alcohol on Swift's trucks and consumption of alcohol within twelve hours of coming on duty. *Id.* at p. 13. Plaintiffs also cited a policy stating that Swift "does not reimburse for items that are for personal use" and the fact that Swift does not always pay for drivers to obtain lodging separate from a truck's sleeper berth. *Id.*; Dkt. 79-1 at p. 23. The Court found that Swift's arguments regarding the relevance of these policies "go to the merits of Plaintiffs' claims, and not to the issue of commonality." Dkt. 96 at p. 14. Consequently, the Court modified Plaintiffs' proposed class definition as follows:

> As to Plaintiffs' "payroll records, wage statement, waiting time, and related unfair competition claims" the Court limited the class to "truck drivers employed by Swift who (a) perform the majority of their work in California, or (b) present themselves for work in California but do not perform the majority of their work in any one state." Dkt. 96 at p. 26.

> For Plaintiffs' "hours worked, minimum wage, and related unfair competition claims" the Court narrowed the class to "truck drivers employed by Swift who are California residents, where membership in the class is limited to work hours logged in California." *Id.*

### III.   SUMMARY JUDGMENT STANDARDS

A party in a civil case is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment may either "submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "Where the non-moving party has the burden at trial…the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-

moving party's case." *Cole v. CRST, Inc.*, 2017 WL 1234215, at *1 (C.D. Cal. 2017); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Plaintiffs in this case have the burden of proof. *See Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1328 (2018) ("As a general rule, employees have the burden of proving that they performed work for which they were not compensated.").

If the moving party satisfies its initial burden, "the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.*; *see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (nonmoving party on summary judgment motion "had an obligation to produce any evidence in response"). "The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

Fed. R. Civ. P. 56(a) permits summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(f) provides: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." To the extent the Court concludes that there are triable issues of fact as to any of Plaintiffs' claims or a particular issue (such as whether high value load policies, or other policies, constitute control) Swift requests that the Court grant partial summary judgment as to each of Plaintiffs' claims or issue to which there are not triable issues. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1051 (C.D. Cal. 2011) ("partial summary judgment or summary adjudication is appropriate as to specific issues if it will narrow the

1   issues for trial").  "Summary judgment procedure is properly regarded not as a disfavored

2   procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

3   designed 'to secure the just, speedy and inexpensive determination of every action.'"

4   *Celotex*, 477 U.S. at 327.

5                              **IV.   <u>ARGUMENT</u>**

6          Swift's motion for summary judgment is directed to Plaintiffs' class claims.  *See Taylor*

7   *v. Cox Commc'ns California, LLC*, 283 F. Supp. 3d 881, 890 (C.D. Cal. 2017) (granting

8   summary judgment on "the certified class claims").  Because the Court found that Plaintiffs'

9   allegations that Swift's employee drivers were prohibited from leaving their truck and its

10  immediate vicinity without approval did <u>not</u> support class certification, these allegations cannot

11  be considered in evaluating Swift's motion as to Plaintiffs' class claims (to the extent the Court

12  finds that triable issues exist due to those allegations, Swift requests class decertification in the

13  alternative to summary judgment).  The Court has already concluded that Swift's written

14  policies permit drivers to leave their truck during off-duty time and do not require drivers to

15  spend the night in a truck's sleeper berth.  Dkt. 96 at pp. 9-11.  The Court further concluded

16  that conflicting class member testimony as to whether drivers were instructed to remain with

17  their vehicles at all times precluded class certification as to this theory of liability.   *Id.*

18  Therefore, the only issues that Swift needs to address are Plaintiffs' allegations that Swift's

19  high-value load and high-theft area policies, and a set of "other restrictions," rendered all off-

20  duty and all sleeper-berth time compensable.  These are the only issues that the Court found

21  could be certified for class proceedings, and all of Plaintiffs claims for relief are dependent on

22  these allegations.  *Id.* at pp. 11- 21; Dkt. 1; Dkt. 79 at p. 3.  As set forth below, none of the

23  policies alleged by Plaintiffs, and that the Court concluded support class certification, makes

24  **<u>all</u>** off-duty and sleeper berth time compensable.

1    Under Plaintiffs' certified theories, all time logged in the off-duty and sleeper berth

2    statuses is not compensable as a matter of law.  If the Court finds that triable issues exist as to

3    some of the off-duty or sleeper berth time, it should grant partial summary judgment as to that

4    time which is not compensable as a matter of law.

5    A.    **Plaintiffs Must Prove That Swift Exercised Control Over Class Members'**

6    **Off-Duty and Sleeper Berth Time**

7    Plaintiffs' claims in this case arise under California law. Dkt. 1.  The definition of "hours

8    worked" in the California Industrial Welfare Commission Wage Order governing the

9    transportation industry (Wage Order 9) therefore governs whether off-duty and sleeper berth

10   time is compensable in this case.  *See Frlekin v. Apple Inc.,* 8 Cal. 5th 1038, 1046 (2020) (IWC

11   Wage Orders' definitions of "hours worked" determines compensable time in California).

12   Wage Order 9 defines "hours worked" as time "an employee is subject to the control of an

13   employer" or "is suffered or permitted to work."  Cal. Code Regs., tit. 8, § 11090.  Plaintiffs

14   do not contend that Swift "suffered or permitted" class members "to work" during off-duty or

15   sleeper berth time.  See Dkt. 1, 79-1, 89.  And even if they had, there is no evidence that class

16   members performed any work while in the sleeper berth or off-duty status, or that Swift was

17   aware or should have been aware of such work.  SUF # 19.  Thus, "whether an employee

18   deserves pay in California turns on whether the employer exercised control over the

19   employee."  *Ridgeway v. Walmart Inc*, 946 F.3d 1066, 1077 (9th Cir. 2020).  "[W]hether an

20   activity is required [is] probative in determining whether an employee is subject to the

21   employer's control."  *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1056 (2020).

22   Plaintiffs may rely, as they have in the past, on a set of federal regulations implementing

23   and interpreting the federal Fair Labor Standards Act as establishing the appropriate standards

24   in this case.  These federal regulations have no relevance to this California wage and hour case,

which is governed by the IWC wage orders.  *See Frlekin*, 8 Cal. 5th at 1046.  The California

Supreme Court has already held that the regulation Plaintiff cites is *not* incorporated into

California law (with one exception for ambulance workers), and the Wage Orders' definition

of "hours worked" govern.  *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 838-342 (2015).

Even if the federal regulations Plaintiffs rely on were applicable, their interpretation of

the regulations as imposing a per se rule that drivers are engaged in compensable time twenty-

four hours a day, seven days a week while away from home, subject only to an eight hour

"deduction" for sleep time, is incorrect.  Plaintiffs misinterpret 29 C.F.R § 785.22(a), which

provides: "Where an employee is required to be on duty for 24 hours or more, the employer

and the employee may agree to exclude bona fide meal periods and a bona fide regularly

scheduled sleeping period of not more than 8 hours from hours worked, provided adequate

sleeping facilities are furnished by the employer and the employee can usually enjoy an

uninterrupted night's sleep."  Plaintiffs argue this means that for long-haul or over-the-road

drivers, only 8 hours of sleep time each day may be excluded from hours worked, and the

remaining time is per se compensable.  However, what 29 C.F.R. § 785.22(a) actually does is

permit the exclusion of up to eight hours of sleep time from ***otherwise compensable*** time by

agreement "[w]hen an employee ***is required to be on duty*** for 24 hours or more."  (emphasis

added).  This reading is consistent with how California courts have analyzed 29 C.F.R. §

785.22.  In *Mendiola*, the California Supreme Court first analyzed whether time on the

employer's premises was compensable under the Wage Orders' "control" test, before

separately deciding that 29 C.F.R. § 785.22 is not part of California law and does not permit a

deduction of eight hours of sleep from the time found to be compensable.  60 Cal. 4th at 838-

342; *see also Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361, 373-383 (2011)

(analyzing control before separately deciding applicability of 29 C.F.R. § 785.22).

A number of federal cases addressing the applicable regulations have adopted Swift's interpretation.  *See*, *e.g.* *Petrone v. Werner Enterprises, Inc.*, 2017 WL 510884, *5-7 (D. Neb. 2017); *Kennedy v. LTI Trucking Servs., Inc.*, 2019 WL 4394539, *3-6 (E.D. Mo. 2019); *Blodgett v. FAF, Inc.*, 446 F. Supp. 3d 320, 326-329 (E.D. Tenn. 2020).  *Nance v. May Trucking Co.*, 2014 WL 199136, *6-8 (D. Or. 2014) granted summary judgment to a motor carrier employer where the plaintiffs argued that the DOL regulations makes sleep time in a moving vehicle compensable based on 29 C.F.R. § 785.21.  29 C.F.R. § 785.21 is very similar to 29 C.F.R. § 785.22 and provides "[a]n employee who is *required to be on duty* for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy."  *Nance* held that 29 C.F.R. § 785.21's presumption of work while being permitted to sleep ***applies <u>only</u>*** when an a driver is ***"required to be on duty,"*** and 29 C.F.R. § 785.41 establishes that sleeper berth time for team truck drivers is not on-duty.[1]  *Nance*, 2014 WL 199136 at *8.  *Nance* was affirmed by the Ninth Circuit on this point, albeit in an unpublished decision.  *See Nance v. May Trucking Co.,* 685 F. App'x 602, 605 (9th Cir. 2017).

In order to prevail on their class claims, Plaintiffs must prove that the class members were subject to Swift's control during off-duty and sleeper berth time, in accordance with Wage Order 9's definition of "hours worked."

## B. Over-the-Road Drivers' Home Time Is Not Compensable

Plaintiffs' class certification motion asserted that their claims arise "from unpaid time

---

[1] 29 C.F.R. § 785.41 governs "[w]ork performed while traveling" and provides that: "[a]n employee who drives a truck … or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer." 29 C.F.R. § 785.41 establishes that when a truck driver is on a break, or "permitted to sleep in adequate facilities furnished by the employer," such time is <u>not</u> compensable *even if the driver is in a moving vehicle.*

-15-

subject to Swift's control logged as 'sleeper berth' or 'off duty' on Drivers' Department of
Transportation (DOT) driver logs."   Dkt. 79 at p. 1.   From the allegations in Plaintiffs'
complaint and class certification motion, Swift does not understand Plaintiffs to be alleging
that drivers' home time is "subject to Swift's control," although it is recorded as "off-duty."
Plaintiffs' filings make numerous references to their claims arising from time drivers are "out
on the road," "over the road" or on "tours of duty."  Dkt. 1 ¶¶ 4-5, 43; Dkt. 79-1 at pp. 12, 14,
16-17.   And there is no conceivable theory under which time a class member spends at his or
her residence without any work duties could be compensable.  The Court should therefore, at
a minimum, grant partial summary judgment to Swift as to all home time.

Because the Court limited Plaintiffs' claims to "hours logged in California" by "truck
drivers employed by Swift who are California residents," a significant portion of the off-duty
time recorded in the class members' hours of service logs will be indisputably non-
compensable home time.  To establish that time logged as off-duty is compensable, Plaintiffs
must therefore prove that the off-duty time in a class member's logs is (1) <u>not</u> home time, and
(2) subject to Swift's control.[2]

Off-duty time that is not home time in California may include short breaks or time at a
truck stop before a driver goes into the sleeper berth to rest.  During off-duty time at a truck
stop, drivers may be eating, showering, or doing laundry.  SUF # 17; Dkt. 88-3 at p. 12 ¶ 6;
Dkt. 88-3 at p. 61 ¶¶ 6-7; The Court has already concluded that the question of whether drivers
must stay with their vehicles while on the road is not amenable to class certification.  Plaintiffs
must therefore rely on the other allegations in their complaint and class certification motion to
prove that off-duty time not spent at home is compensable, which, as set forth below, they are

---

[2] Hours of service logs do not distinguish home time from other off-duty time.  SUF # 6.
Whether any particular segment of recorded off-duty time is not home time is something that
Plaintiffs must prove.

1   unable to do.

2       **C.**    **Swift's Policies Governing The Use of Its Trucks Is Not Control**

3       For the most part, the policies that Plaintiffs rely on are policies that govern the use of

4   Swift's company-owned vehicles, <u>not</u> control over the *driver*.  For example, Plaintiffs rely on

5   rules requiring approval to bring pets or passengers aboard a Swift truck, and forbidding the

6   presence of alcohol.  See Dkt. 88-1, Ex. 9 at SWIFT016124; SWIFT000310.  But these rules

7   only apply when the driver is actually in Swift's truck, and they apply regardless of whether a

8   driver is in an on-duty or off-duty status.  *Id.*; SUF # 32.  They have nothing to do with whether

9   drivers are subject to Swift's control during off-duty or sleeper berth time.  Class members are

10  free of these restrictions as soon as they step out of the truck—which Swift's policies expressly

11  allow them to do.  SUF # 32

12      General rules governing an employer's property or worksite do not constitute control

13  merely because they are applied to off-duty time spent at the worksite.  *Griffin v. Sachs Elec.*

14  *Co.*, 390 F. Supp. 3d 1070 (N.D. Cal. 2019) held that application of "general workplace rules"

15  to employees on an employer's property does not transform non-compensable time into

16  compensable time.  The plaintiff in *Griffin* alleged that general rules like "safety and personal

17  protective equipment rules, discrimination rules, anti-harassment rules, environmental rules,

18  **alcohol and drug policies**, rules related to being subject to searches for alcohol [and] drugs,

19  no practical jokes, no horseplay rules, no gambling rules, no photography, [and] no loud music"

20  and "no firearms" that employees must follow while traveling on an access road behind a

21  security gate on the employer's property to get to their worksite did not make the time spent

22  traveling "hours worked." *Id.* at 1091.  The court found that "these general workplace rules do

23  not equate to control within the meaning of 'hours worked' because they simply reflect

24

1  standard workplace requirements…"[3]  *Id.* at 1092.  The plaintiff also cited rules such as

2  "[f]ollowing a posted speed limit, not interfering with animals [ ], **not bringing visitors**, and

3  not smoking" that employees were required to follow on the access road, yet the court found

4  that "each rule is analogous to ordinary rules on virtually every employer's premises that

5  employees must respect at all times, even when not getting paid."  *Id.* at 1089.  The district

6  court's decision in *Griffin* was affirmed by the Ninth Circuit at 831 F. App'x 270.

7       Plaintiffs' theory that the rules restricting the presence of alcohol, and passengers and

8  pets in *Swift's trucks*, without approval (which drivers can and do routinely obtain), constitutes

9  control, is the same theory rejected in *Griffin*.  These minor restrictions are simply "general

10  workplace rules" regarding what drivers may do on their employer's property.  In fact, they

11  are significantly less onerous than the rules in *Griffin*, because the employees in *Griffin* had no

12  choice but to use the access road and subject themselves to the rules to get to their worksite.

13  By contrast, Swift's drivers are free to leave their trucks and spend their time as they please

14  when off-duty.  Indeed, the employees in *Griffin* were subject to many more rules regarding

15  "no practical jokes, no horseplay [], no gambling [], no photography, [and] no loud music" that

16  do not exist here.  *Griffin*, 390 F. Supp. 3d at 1092.

17       Swift clearly has the right to restrict the presence of unauthorized pets and passengers

18  on its trucks, which can cause damage to the trucks, create liability, or constitute a safety risk.

19  In fact, the passenger rules are mandated by the FMCSA.  SUF # 33.  Applying these rules

20  when drivers are off-duty and onboard the truck does not constitute control.  Were it otherwise,

21  an employer could never enforce basic rules against damaging the workplace or bringing in

23  [3] The defendant had pointed out many examples of generally applicable worksite rules that

24  would not constitute control, including "no smoking, no littering, no loitering, no talking to customers, no carrying weapons, no eating or drinking, no sleeping, **no pets**, and no disruptive noises."  *Id.* at 1090 (emphasis added)

-18-

1   unauthorized visitors during employees' off-duty breaks, even when employees are free to

2   leave the premises.  This is absurd and not the law in California.[4]

3          Plaintiffs' reliance on Swift's personal conveyance policies is misplaced for the same

4   reasons.  The personal conveyance policy has only been in place since 2020, and allows drivers

5   to use Swift's trucks for personal errands and not have driving time count against their federal

6   hours of service driving limits if certain conditions are met.  SUF # 9-11.  Swift is not required

7   to allow drivers to use its vehicles during off-duty or sleeper berth time at all.[5]  The fact that it

8   does so as a benefit to drivers and allows personal driving time to be recorded as personal

9   conveyance for purposes of the federal hours of service rules under certain conditions is not

10  control and does not transform the personal off-duty time into compensable time.   Class

11  members can and do leave their trucks by means of transit that do not involve the use of Swift's

12  property and which can be recorded as off-duty without any conditions.  SUF # 12.  Examples

13  given by class members include an app-based ride share, and getting picked up by a friend or

14  family member.  *Id.*

15         *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263 (2006) is instructive.  There, the

16  California Court of Appeal held that time spent on employer-provided shuttles traveling from

17  a designated parking lot to the worksite was not compensable.  Because use of the shuttles was

18  optional, and employees could arrange for alternative transportation to the worksite, the time

19  spent on the shuttles was not compensable even though the employer did not provide on-site

20  _____

21  [4] *Griffin* is the only decision Swift's research has disclosed on the subject of whether general
    rules regarding use of an employer's property during off-duty time makes the time

22  compensable, but "a dearth of authority on the precise point" is often "because the answer is
    obvious."  *Ewald v. Lane*, 104 F.2d 222, 223 (D.C. Cir. 1939).

23  [5] Similarly, Swift is not required to pay for employee lodging separate from the sleeper berth
    (although it often does), so the fact that it does not always pay for alternative lodging and

24  provides the sleeper berth (which is optional for drivers to use) is not control.  And nothing
    requires Swift to pay for personal items for drivers, as Plaintiffs suggest.

parking and 90% of employees used the shuttles.  *Id.* at 267, 271-274.  Swift permitting, but not requiring, drivers to use Swift's trucks during off-duty time (for sleep or transit) is similar to the optional employer-owned shuttles in *Overton* and similarly does not turn the class members' off-duty time into compensable time.  *See also Frlekin*, 8 Cal. 5th at 1056 ("[W]hether an activity is required remains probative in determining whether an employee is subject to the employer's control.")

Therefore, Swift's policies regarding the permissible use of its trucks during off-duty and sleeper berth time are not control as a matter of law.

### D.   Alleged Practical Hardships Not Imposed By Swift Do Not Constitute Control

Plaintiffs' discovery responses and motion for class certification argue that Swift's policies coupled with the practical realities of working away from home for extended periods of time are sufficient to establish control over 100% of class members' time on the road. California law is otherwise.  Dkt. 79-1; Ellis Dec. Exs. 1-2.  The California Supreme Court in *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016) held that "practical limitations" on how an employee spends his or her off-duty breaks "is not sufficient to establish employer control."  This Court has also held in a case involving similar sleeper berth allegations against a motor carrier that "California case law recognizes that some limitations on employees' off-duty time are unavoidable…[a] practical limitation does not, by itself, establish [the employer's] control."  *See Ayala v. U.S Xpress Enterprises, Inc.*, 2020 WL 4760177, at *4 (C.D. Cal. 2020).  Thus, the fact that life on the road may be difficult or that a truck's sleeper berth is often the most practical option to spend the night does not constitute control, because they are not limitations imposed *by Swift*.

A number of California federal court decisions illustrate this principle.  In *Osman v. Tatitlek Support Servs., Inc.*, 2017 WL 945024, *4-5 (C.D. Cal. 2017), the court held that

-20-

employees of a contractor who worked at a military base were not under the control of their employer for wage and hour purposes when they were unable to leave to base due to a lockdown imposed by the Marine Corps. *Id.* Nor were the employees subject to their employer's control due to alleged poor conditions on the base and "limited certain recreational options." *Id.* at *5. The court held that "it is the level of employer control that is determinative of the issue, not the employee's comfort during personal time." *Id.* Because their employer relieved them of all duty, and any restrictions that existed were imposed by the Marines, the employees' time on the base was not compensable despite the "practical realities." *Id.*

*Cazares v. Host Int'l, Inc.*, 2021 WL 3667227 (9th Cir. 2021) is similar. There, the Ninth Circuit held that an employee who was assigned to work at an airline lounge in an airport was not subject to an impermissible on-duty meal period when he was free to leave the lounge, even though he could not leave the secured area of the airport and return without going through the airport's security protocols. *Id.* at *2; *cf. Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 973-975 (1995) (applying hours worked definition and control test to question of whether meal periods were provided). Because the employer relieved the plaintiff of all responsibility during off-duty breaks and permitted him to leave the lounge, his breaks were not compensable hours worked merely because he could not practically leave the airport. *Cazares*, 2021 WL 3667227 at *2.

*Osman* and *Cazares* demonstrate that the practical realities of working as an over-the-road driver are insufficient to establish that *Swift* controlled class members' off-duty and sleeper berth time. Swift's policies relieve drivers of all responsibility and work readiness during off-duty and sleeper berth time and permit drivers to leave their trucks and spend the night wherever they wish. SUF # 7, 12-19. The fact that some drivers may find this practically difficult is not relevant to whether their off-duty and sleeper berth time is legally compensable.

E.     **Swift's Policies on Alcohol Consumption Are Not Control**

Contrary to Plaintiffs' contentions, Swift's policy restricting alcohol consumption within twelve hours of coming on duty does not constitute control. Not every minor restriction on how an employee spends his or her off-duty time is sufficient to render the time compensable. "[A]n employer may place some constraints on an employee's movement during breaks," but "control exists if the employer goes *too far*." *Ridgeway v. Walmart Inc*., 946 F.3d 1066, 1078 (9th Cir. 2020) (emphasis added). California case law establishes that a reasonable off-duty restriction on alcohol consumption does not go "too far" and does not give rise to employer control. Indeed, to find to the contrary, would be to put the nation at risk of drunk truck drivers.

In *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 512 (2009), the defendant healthcare employer required its employees to be available "to respond telephonically to pages within 30 minutes, and to be available to respond to patient calls, in person, within two hours" on some nights or weekends. The employees were also "**prohibited from consuming alcohol** while on call, but were otherwise free to engage in any activities desired." *Id.* at 512-513. Notwithstanding the restriction on consuming alcohol, the California Court of Appeal found that employees' on-call time was *not compensable*, because the employer's policies were "not unduly restrictive." *Id.* at 524. Swift's policies prohibiting alcohol consumption within twelve hours before coming on-duty are less restrictive that the ban in *Gomez*, which could last for an entire weekend.

Furthermore, the FMCSA prohibits truck drivers from consuming or being under the influence of alcohol within four hours of going on duty or operating a commercial motor vehicle. 49 C.F.R. § 392.5. Although Swift's twelve hour prohibition is somewhat broader, it serves to implement the FMCSA rule against *being under the influence* of alcohol at all within

1  four hours of going on duty or driving.  SUF # 34.  A restriction imposed by a government

2  actor does not constitute control by an employer for wage and hour purposes.  *See Osman v.*

3  *Tatitlek Support Servs., Inc.*, 2017 WL 945024, at *5 (C.D. Cal. 2017) (control exerted by the

4  U.S. Marine Corps is not control by the employer); *see also Cazares v. Host Int'l, Inc.*, 2021

5  WL 3667227, at *2 (9th Cir. 2021) (control imposed by LAX airport is not control by the

6  employer).  Therefore, Swift's alcohol policies do not give rise to control.

7       F.  **Swift Policies Regarding High-Value Loads and High-Theft Areas Are Not
           Control And At Most apply to 3% of Loads**

8       Swift's policies regarding high-value loads and high-theft areas are rarely applicable to

9  this class of drivers, and even when they may be, they do not support Plaintiffs' claims that

10 off-duty and sleeper berth time is compensable.  The additional rules when driving high-value

11 loads and in high-theft areas do not supersede Swift's policies that drivers are relieved of all

12 responsibility for their truck and cargo during off-duty and sleeper berth time.  Dkt. 88-1 ¶ 20.

13 Indeed, it is the law that drivers cannot record time as off-duty unless they are truly relieved of

14 all responsibility.  49 C.F.R. § 395.2.  Additionally, the current version of Swift's high-value

15 load policy has been in effect since March 2020, and does not state that high-value loads should

16 not be left unattended and instead provides guidance on where and how to park to go off-duty.

17 SUF # 26-27.  Thus, even in the extremely rare circumstance in which a class member drives

18 a high-value load or drives in a high-theft area in California *with a need to stop in the HTA*, the

19 class member is still free to leave his or her truck and pursue activities of his or her choosing.[6]

20      Indeed, even if the high-value load and high-theft area policies required class members

21 to not leave Swift's trucks unattended during off-duty time, a load is not unattended if it is left

---

[6] To the extent the Court finds that there are any triable issues of fact as to high-value loads
or high-theft areas, it should at a minimum grant summary judgment on claims involving
high-value loads arising after Swift's March, 2020 policy went into effect.

Case No. 2:19-cv-03203-VAP (KKx)
SMRH:4866-1964-6276.7                                                    SWIFT'S MOTION FOR SUMMARY JUDGMENT

1    at a secure facility such as a Swift yard.  SUF # 24, 29.  **There are over twenty such locations**

2    **in California alone**.  SUF # 25.  Furthermore, the policies are applied practically such that

3    drivers may leave high value loads and loads in high-theft areas while at a truck stop to go

4    inside and use the restroom, take a shower, eat, or do laundry as long as the truck is secure.

5    SUF # 24, 29; Dkt. 88-1 ¶ 20.  A truck is considered secure and not "unattended" if the trailer

6    is locked and parked up against another trailer, wall, light post or other barrier so it cannot be

7    easily accessed.  *Id.*  Because drivers are able to leave high-value loads and loads in high-theft

8    areas when secure, and in fact do so, Swift is entitled to summary judgement as to high-value

9    loads and any time stopped and off-duty in high-theft areas.

10          Additionally, there are only three high-theft areas in the country, and trips are planned

11   so that drivers will not have to stop within those high-theft areas or at a secure Swift facility

12   within such an area.  SUF # 28, 31.  In fact, there is only one high-theft area in California (in

13   and around Los Angeles) and the Court limited the class wage claims to hours driven inside

14   California.  SUF # 28, Dkt. 96 at p. 26.  Without any evidence that drivers were unable to park

15   at a secure location within this area, or simply drive through it and stop outside, Plaintiffs are

16   unable to prove that any off-duty or sleeper berth time within the California high-theft area is

17   compensable.  SUF # 30 (class members may drive through high-theft areas without ever

18   stopping).

19          Even if there were triable issues as to the insignificant amount of time class members

20   record as off-duty in a high theft area or while carrying a high value load, the Court may (and

21   should) grant partial summary judgment to Swift as to all off-duty and sleeper berth time that

22   is not in a high theft area and/or while not carrying a high value load.[7]

23

24   _____

[7] The two named Plaintiffs, Bouissey and Hodges, never drove a high value load even once
during the class period, and therefore this policy was never applicable to them.  SUF # 22-23.

-24-

### G.    The Other Rules Cited By Plaintiffs Do Not Constitute Control

Plaintiffs' motion for class certification and cited a hodgepodge of other rules and practices of Swift, none of which support a finding of control during off-duty and sleeper berth time.  These miscellaneous policies, such as a rule that drivers should not detach their trailers unless at a Swift terminal or other approved location, an expectation that drivers deliver loads on time, a statement in an old handbook that a driver "is responsible for the safe operation of the vehicle," and the fact that Swift provides routes for deliveries, all relate to time class members are on-duty and therefore paid.  *See* Dkt. 79-1; Ellis Dec. Exs. 1-2 at Rog 7.  Thus, such policies have nothing to do with alleged control during off-duty or sleeper-berth time.

Plaintiffs have also suggested that the presence of event recorders in drivers' trucks constitute control.  These devices only capture video on the exterior of a truck and only within ten seconds of certain risky *driving events*.  SUF # 35.  They do not capture data or video when a truck is not being operated, which will always be the case during off-duty or sleeper berth time.  Plaintiffs have also cited a provision of Swift's 2016 handbook stating that Swift reserves the right to "inspect" its vehicles at any time.  However, Swift does not "inspect" drivers' trucks when they are out on the road.  Swift will only "inspect" a truck when the driver is at a Swift terminal and either on-duty, or off-duty and free to leave.  SUF # 36.  These rules and practices therefore do not contribute to control.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Swift's motion for summary judgment as to Plaintiffs' class claims.  Alternatively, the Court should grant summary judgment on any class claim or issue as to which there are no triable issues of fact.

SMRH:4866-1964-6276.7

1 | Dated:  January 30, 2023

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By       *_/s/ John D. Ellis_*
                PAUL S. COWIE
                ROBERT E. MUSSIG
                JOHN D. ELLIS
                NINA MONTAZERI

         Attorneys for Defendant SWIFT
    TRANSPORTATION CO. OF ARIZONA, LLC

SMRH:4866-1964-6276.7

Case No. 2:19-cv-03203-VAP (KKx)
SWIFT'S MOTION FOR SUMMARY JUDGMENT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant, certifies that this brief contains less than 25 pages, which complies with Judge Virginia Phillips' standing order dated September 13, 2021.

DATED:  January 30, 2023

/s/ *John D. Ellis*
John Ellis