**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Edward Bouissey et al, | Case No. 2:19-cv-03203-VAP-KKx |
| Plaintiffs, | |
| v. | **Order GRANTING IN PART and DENYING IN PART Defendant's Motion for Summary Judgment (Dkt. 106-1)** |
| Swift Transportation Co., Inc. et al, | |
| Defendants. | |

Before the Court is Defendant Swift Transportation Co. of Arizona, LLC's ("Defendant") Motion for Summary Judgment ("Motion") filed on January 30, 2023.  ("Mot.," Doc No. 106-1.)  Plaintiff Edward Bouissey and Richard Hodges (collectively, "Plaintiffs") filed an Opposition on March 6, 2023.  ("Opp'n," Doc. No. 110.)  Defendant filed a reply on March 20, 2023. (Reply, Doc. No. 113.)

After considering all the papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced at the hearing, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiffs worked for Defendant as truck drivers in various locations across California in 2015 and 2016.  (Compl., Doc. No. 1, ¶¶ 32-33.)  During

1

United States District Court
Central District of California

the relevant time period, Defendant required its drivers to log each hour of every 24-hour period as one of either: "driving," "on-duty, not driving," "off-duty," or "sleeper berth." (*Id.* ¶ 7, 31.)  Plaintiffs allege that Defendant did not pay its drivers for time marked "off-duty" or "sleeper berth" in circumstances where they were subject to Defendant's control and entitled to payment.  (*Id.* ¶ 8-10.)  Plaintiffs therefore assert six claims against Defendant for: (1) failure to pay for all hours worked; (2) failure to pay minimum wages; (3) failure to keep accurate payroll records; (4) failure to furnish accurate wage statements; (5) failure to promptly pay separated employees the wages they were due; and (6) engaging in unfair competition.[1]  (*Id.* ¶¶ 71-134.)

On September 27, 2022, the Court certified a class comprised of truck drivers employed by Defendant from November 26, 2014 until the date class notice is provided, who:

(1) For the payroll records, wage statement, waiting time, and related unfair competition claims: (a) perform the majority of their work in California, or (b) present themselves for work in California but do not perform the majority of their work in any one state;

(2) For the hours worked, minimum wage, and related unfair competition claims: are California residents, where membership in the class is limited to the work hours logged in California.

(Doc. No. 96.)

---

[1] The Court previously dismissed Plaintiffs' meal and rest period claims pursuant to the parties' stipulation.  (Doc. No. 78.)

United States District Court
Central District of California

On January 30, 2023, Defendant filed the present Motion for Summary Judgment, (Doc. No. 106-1), and a Statement of Undisputed Facts, ("Defendant's SUF," Doc. No. 106-2.)  Defendant also filed two declarations: Declaration of David Tillman ("Tillman Decl.," Doc. No. 106-3); and Declaration of John Ellis ("Ellis Decl.," Doc. No. 106-4.)

On March 6, 2023, Plaintiffs filed an opposition to Defendant's Motion, (Doc. No. 110), a Statement of Genuine Issues, ("Plaintiffs' SGI," Doc. No. 111 at 5-30), a Statement of Undisputed Facts, ("Plaintiffs' SUF," Doc. No. 111 at 31-42), and evidentiary objections, ("Plaintiffs' Evidentiary Objections," Doc. No. 112.)  Plaintiffs also filed the Declaration of Nathan Piller ("Piller Decl.," Doc. No. 110-1), attaching Exhibits 1 through 34 (Doc. Nos. 110-2 through 110-35.)

On March 20, 2023, Defendant filed a Reply, (Doc. No. 113), a Statement of Genuine Issues, ("Defendant's SGI," Doc. No. 113-1), evidentiary objections, ("Defendant's Evidentiary Objections," Doc. No. 113-3), and a response to Plaintiffs' Evidentiary Objections, ("Defendant's Response to Plaintiffs' Evidentiary Objections," Doc. No. 113-2.)

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

3

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" and show specific facts which raise a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

### III.   EVIDENTIARY OBJECTIONS

Plaintiffs assert numerous objections to Defendant's evidence submitted in support of its Motion for Summary Judgment.  (Plaintiffs' Evidentiary Objections, Doc. No. 112.)  Defendant raises a single objection

United States District Court
Central District of California

to Plaintiffs' evidence submitted in support of their Opposition.  (Defendant's Evidentiary Objections, Doc. No. 113-3.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also Weil v. Citizens Telecom. Servs. Co.*, 922 F.3d 993, 998 (9th Cir. 2019) ("we may only consider admissible evidence when reviewing a motion for summary judgment").  At the summary judgment stage, however, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented— it is sufficient that a party will be able to produce evidence in its admissible form at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).

Plaintiffs object to the following statements found in Defendant's supporting declarations:

1. "[T]here are no records that would indicate whether any particular segment of off-duty time on drivers' logs is home time or some other off-duty time."  (Tillman Decl. ¶ 3.)

2. "[Defendant's] rules regarding passengers are mandated by the Federal Motor Carrier Safety Administration."  (*Id.* ¶ 4.)

3. "The purpose of [Defendant's alcohol] policy is to implement the Federal Motor Carrier Safety Administration's rules prohibiting a driver from consuming or being under the influence of alcohol within four hours of a going on duty or operating a commercial motor vehicle."  (*Id.* ¶ 5.)

5

4. "Sleeping in the truck's sleeper berth is entirely voluntary."  ("Quast Decl.," Doc. No. 88-1, ¶ 8.)

5. "According to [Defendant's] records, only approximately 3% of all loads delivered by over-the-road drivers who were California residents or assigned to a California terminal since February 1, 2019, were high value loads.  According to [Defendant's] records, almost half of all over-the-road drivers who were California residents or assigned to California terminal never drove a single high value load from February 1, 2019 to the present."  (*Id.* ¶ 19.)

6. "[T]rips are planned such that drivers always have an opportunity to drop their loads outside of high-theft areas or at a secure Swift location, where drivers are free to leave their trucks when off-duty even when inside a high theft area."  (*Id.* ¶ 21.)

7. "Based on an individual review of [Defendant's] records pertaining to both Plaintiffs' loads, neither Bouissey or Hodges ever drove a single high value load during their employment with [Defendant]."  ("Suppl. Quast Decl.," Doc. No. 94, ¶ 2.)

(Plaintiffs' Evidentiary Objections Nos. 1-7.)

Plaintiffs argue that the persons who made the above statements lack the personal knowledge necessary to support them.  (*Id.*)  The Court disagrees.  David Tillman's declaration states that he is the Vice President of Safety and Driver Development for Defendant, and that his responsibilities include ensuring Defendant's compliance with federal regulations.  (Tillman Decl. ¶ 1.)  Kevin Quast's declaration states that he is the Chief Administrative Officer for Defendant, previously served as the

United States District Court
Central District of California

Chief Operating Officer, and that his responsibilities included reviewing various company records.  (Quast Decl. ¶ 1.)  Defendant has established that David Tillman and Kevin Quast have sufficient personal knowledge to testify about the above matters concerning Defendant's driver policies and records.

Plaintiffs alternatively argue that the best evidence rule precludes the first, fifth, and seventh statements related to Defendant's driver records.  (Plaintiffs' Evidentiary Objections Nos. 1, 5, 7.)  The first and seventh statements, however, concern the absence of records, and as such, do not implicate the best evidence rule.  *See United States v. Diaz-Lopez*, 625 F.3d 1198, 1202 (9th Cir. 2010) ("[T]estimony that an event did *not* occur because relevant records contain no mention of it . . . is usually held not to constitute proof of contents and thus not to require production of records." (citation and internal quotation marks omitted)).  In any case, objections based on the best evidence rule are inapposite because the Court, at the summary judgment stage, focuses on the admissibility of the evidence and not the form in which it is presented.  *See Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992) (holding that a declaration's violation of the best evidence rule did not preclude a district court from considering it at the summary judgment stage).  The Court accordingly overrules Plaintiffs' first through seventh objections.

Plaintiffs additionally object to the Declaration of David Bilderback.  (Plaintiffs' Evidentiary Objections No. 8).  As Defendant has agreed to

withdraw the declaration, the Court does not consider it.  (*See* Defendant's

Response to Plaintiffs' Evidentiary Objections, Doc. No. 113-2, No. 8.)

Defendant, in turn, objects to an online article attached as Exhibit 24

to the Declaration of Nathan Piller.  (Defendant's Evidentiary Objections No.

1.)  Plaintiffs rely on the article to assert that "[n]umerous public, private,

academic and non-profit studies" show "severe shortages of parking for

trucks[.]"  (Opp'n at 5 n.1 (quoting Doc. No. 110-25).)  The Court agrees with

Defendant that the statements from the article on which Plaintiffs rely

constitute inadmissible hearsay and excludes them.

## IV.    FACTS

Plaintiffs and Defendant each filed statements of undisputed facts,

(Defendant's SUF, Doc. No. 106-2; Plaintiffs' SUF, Doc. No. 111 at 31-42),

and both filed a statement of genuine issues (Defendant's SGI, Doc. No.

113-1; Plaintiffs' SGI, Doc. No. 111 at 5-30.)  Local Rule 56 allows the Court

to find that "the material facts as claimed and adequately supported by the

moving party are admitted to exist without controversy except to the extent

that such material facts are (a) included in the 'Statement of Genuine

Issues' *and* (b) controverted by declaration or other written evidence filed in

opposition to the motion."  L.R. 56-3 (emphasis added).  To the extent

certain facts or contentions are not mentioned in this Order, the Court has

not found it necessary to consider them in reaching its decision.

### A. Undisputed Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of deciding Defendant's Motion for Summary Judgment.  See C.D. Cal. L.R. 56-3.

Defendant pays its drivers for hours they record as "driving" or "on-duty, not driving."  (Defendant's SUF No. 8; Plaintiffs' SGI No. 8.)  Defendant does not pay its drivers for time they record as "off-duty" or "sleeper berth." (Plaintiffs' SUF No. 55; Defendant's SGI No. 55.)  Defendant's driver handbook states that drivers should only record time as "off-duty" or "sleeper berth" when the driver is "relieved of all responsibility and not required to be in work readiness."  (Defendant's SUF No. 7; Plaintiffs' SGI No. 7.)

Defendant nevertheless requires its drivers to stay in the immediate area of their trucks and watch over the security of their loads when their loads are determined to be "high value" or when their loads are in a designated "high theft" area, even during times marked as "off-duty" or "sleeper berth."  (Plaintiffs' SUF No. 26; Defendant's SGI No. 26.) Defendant only allows its drivers to leave their high value loads or loads in high theft areas unattended when the loads are parked in one of several designated "secure locations."  (Defendant's SUF Nos. 25, 29; Plaintiffs' SGI Nos. 25, 29.)

Defendant maintains several other policies relevant to the present motion.  First, Drivers may request and receive "home time," which consists of a period as short as one night, or as long as several days, during which drivers do not have to work and typically go home.  (Defendant's SUF No. 5; Plaintiffs' SGI No. 5.)  "Home time" is logged as "off-duty."  (Defendant's SUF No. 5; Plaintiffs' SGI No. 5.)

Second, until 2020, Defendant prohibited its drivers from using company trucks for personal conveyance.  (Plaintiffs' SUF No. 32; Defendant's SGI No. 32.)  In 2020, Defendant modified its policies to allow the use of company trucks for personal conveyance for up to one hour per day.  (Plaintiffs' SUF No. 33; Defendant's SGI No. 33.)  Most recently, in 2021, Defendant modified its policies to limit the use of company trucks for personal conveyance to 25 miles per day.  (Plaintiffs' SUF No. 34; Defendant's SGI No. 34.)

Finally, Defendant prohibits drivers from having unauthorized passengers, pets, or alcohol in company vehicles.  (Plaintiffs' SUF Nos 41, 45, 49; Defendant's SGI Nos. 41, 45, 49.)  Defendant also prohibits drivers from consuming alcohol while on duty or within the 12 hours prior to being on duty.  (Plaintiffs' SUF No. 42; Defendant's SGI No. 42.)

### B.  Disputed Facts

The parties dispute whether Defendant rescinded its high value load policy in March 2020.  (Defendant's SUF No. 26; Plaintiffs' SGI No. 26.)  Defendant attaches its current written policies that were updated in March

2020 to exclude the prohibition against leaving high value loads unattended. (Defendant's SUF No. 26.)  In response, Plaintiffs offer deposition statements claiming that Defendant still trains its drivers not to leave high value loads unattended.  (Plaintiffs' SGI No. 26.)  The parties also dispute whether the named plaintiffs ever drove a high value load during their employment with Defendant.  (Defendant's SUF Nos. 22, 23; Plaintiffs' SGI Nos. 22, 23.)  Defendant offers a statement from its Chief Administrative Officer asserting that the relevant driver records do not show the named plaintiffs as ever having driven a high value load.  (Defendant's SUF Nos. 22, 23.)  Plaintiffs respond with statements from both named plaintiffs claiming that they did, in fact, drive high value loads.  (Plaintiffs' SGI Nos. 22, 23.)

At the summary judgment stage of the litigation, the Court construes the evidence in a light most favorable to Plaintiffs and assumes that Defendant continues to implement its high value load policy despite having removed the relevant language from its written policies.  The Court additionally accepts that both named plaintiffs have driven high value loads for Defendant.

The parties further dispute whether Defendant requires its drivers to "get approval from management to go home."  (Plaintiffs' SUF No. 12; Defendant's SGI No. 12.)  Plaintiffs offer portions of Defendant's "Driver Handbook" explaining how drivers can make a request for a "home call" or "home time," as well as deposition statements by drivers asserting that it is impractical to go home except when on approved "home time."  (Plaintiffs'

SUF No. 12.)  Defendant correctly points out that while Plaintiffs' evidence shows that drivers must seek approval for "home time" and that some drivers may find it difficult to go home unless they are approved for an extended period of "home time," none of the evidence supports Plaintiffs' claim that Defendant actually prohibits its drivers from going home when they are "off duty" but not on "home time."  (Defendant's SGI No. 12.)  Defendant, for its part, explains that a driver's request for home time is a request to receive time off after being routed to the driver's home terminal, and not a request for permission to spend time at home.  (*Id.*)  Defendant additionally offers deposition statements from several drivers claiming to have gone home even while not on "home time."  (*Id.*)  As Plaintiffs have not provided evidence supporting its statement that drivers who are off duty can only go home with Defendant's approval, and as Defendant has provided evidence to the contrary, the Court declines to accept Plaintiffs' statement as true for the purposes of deciding Defendant's Motion for Summary Judgment.

## V.    DISCUSSION

In California, "wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of . . . wage orders, adopted by the IWC [Industrial Welfare Commission]." *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833, 838 (2015) (quoting *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1026 (2012)).  Here, the applicable wage order regulating wages, hours, and working conditions in the transportation industry requires employers to pay employees a

minimum wage for all "hours worked."  Cal. Code Regs. tit. 8, § 11090, subd. 4(B).  "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  *Id.*, § 11090, subd. 2(G).  The parties primarily disagree as to whether class members were subject to Defendant's control during some or all of the hours they recorded as "off-duty" or "sleeper berth," and whether those hours therefore constitute "hours worked" for which class members are entitled to compensation.  (*See* Mot. at 12-25; Opp'n at 9-18.)

### A.  Defendant's Policies

Plaintiffs point to several of Defendant's policies that apply during "off-duty" or "sleeper berth" time that they claim amount to control.  These policies prohibit drivers from: (1) leaving high-value loads or loads in high-theft areas unattended, (Opp'n at 13-14); (2) receiving "home time" without first asking for permission (*id.* at 14-15); (3) using company trucks for personal conveyance for more than a certain number of hours or miles per day (*id.* at 15-16); and (4) having unauthorized passengers, pets, or alcohol in their trucks, or consuming alcohol within the 12 hours prior to being "on duty" (*id.* at 16-18.)  Plaintiffs argue that a reasonable factfinder could find that these policies impose a level of control sufficient to render the class members' "off-duty" or "sleeper berth" time compensable.  (*Id.* at 11-13.)

As a preliminary matter, the Court disagrees with Plaintiffs' contention that the "issue of employer control is a 'factual question that a jury must decide.'"  (*Id.* at 12 (quoting *Mejia v. Inglewood Sportservice, Inc.*, No. 2:20-

United States District Court
Central District of California

CV-09564-ODW-MRWx, 2022 WL 3357656, at \*6 (C.D. Cal. Aug. 15, 2022)).)  California law is clear that "when the relevant facts are not in dispute, what qualifies as hours worked is a question of law."  *Mendiola*, 60 Cal. 4th at 840; *see also Madera Police officers Assn. v. City of Madera*, 36 Cal. 3d 403, 410 n.7 (1984) ("The issue of whether an employee's noncompensatory mealtime has been so restricted as to convert it into hours worked, is a question of law.").  The primary case on which Plaintiffs rely, *Ridgeway v. Walmart Inc*, 946 F.3d 1066 (9th Cir. 2020), is consistent with the principle that the court, not the jury, decides the level of control needed to convert time off into "hours worked."  In *Ridgeway*, the Ninth Circuit stated that "[w]hether [Wal-Mart's] written policies constituted control was a question of law that the district court had the authority to resolve at the summary judgment state," and held that the district court appropriately "submitted the question of whether Wal-Mart *in fact* applied the written policy to the jury."  *Id.* at 1081.

At this stage of the litigation, the Court accepts Plaintiffs' asserted facts as true to the extent that they are supported by evidence.  Having accepted those facts as true, however, the Court determines as a matter of law whether the policies Plaintiffs complain of exert a level of control sufficient to require compensation.

1.   <u>High-Value Loads and High-Theft Areas</u>

Defendant prohibits its drivers from leaving high value loads or loads in high-theft areas unattended unless the loads are left at a designated "secure location."  (Plaintiffs' SUF No. 26; Defendant's SGI No. 26;

Defendant's SUF Nos. 25, 29; Plaintiffs' SGI Nos. 25, 29.)  Defendant does not dispute that drivers who are forced to stay near the vicinity of their trucks pursuant to its high value load or high theft area policies are subject to its control.  Instead, it argues that the policies tethering drivers to their trucks rarely apply, first, because only a small fraction of loads are "high value," and second, because its drivers may, and often do, leave their loads at designated "secure locations."  (Mot. at 7-8.)

While the frequency of Defendant's alleged violations of the law may be relevant to a future determination of damages, it has no bearing on the issue of liability.  Plaintiffs have offered evidence showing that class members sometimes carry high value loads or stop in high theft areas without leaving their loads at designated secure locations, and that they were not paid for time recorded as "off duty" or "sleeper berth" even though they were required to "stay in the immediate area of the truck and watch over the security of the load."  (Plaintiffs' SUF No. 26.)  If, as Defendant asserts, this rarely occurred, then the sum for which it would be liable may be small.  But because Plaintiffs have provided evidence showing that Defendant did at times exercise control over class members without paying them, Defendant cannot disclaim liability altogether.  The Court therefore DENIES Defendant's Motion for Summary Judgment with respect to Plaintiffs' claims to the extent that the claims are based on Defendant's high value load and high theft area policies.

United States District Court
Central District of California

15

2.  <u>Home Time</u>

Defendant requires its drivers to obtain approval before going on "home time."  (Defendant's SUF No. 5; Plaintiffs' SGI No. 5.)  Plaintiffs argue that this requirement "give[s] rise to a dispute of material fact as to whether Drivers must get approval from [Defendant's] management to go home."  (Opp'n at 15.)  As discussed above, however, evidence that drivers must receive permission to go on "home time," *i.e.* receive time off after being routed to their home terminals, is not the same as evidence that drivers must always receive permission to go home.  To the extent that Plaintiffs base their claims on the theory that Defendant controlled class members by prohibiting them from going home during times recorded as "off duty" or "sleeper berth," Plaintiffs have failed to support their claims with evidence.

3.  <u>Personal Conveyance</u>

Defendant places several restrictions on its drivers' personal use of company trucks.  (Plaintiffs' SUF Nos. 32-34; Defendant's SGI Nos. 32-34.)  Plaintiffs do not argue that these restrictions by themselves rise to a level of control requiring compensation.  (Opp'n at 15.)  Instead, Plaintiffs assert that because class members routinely drive for long distances, Defendant's restrictions on the off-duty use of company trucks has the practical effect of "impos[ing] a geographic limit" on class members.  (*Id.*)

Not all practical limitations on an employee's movement, however, constitute control.  For example, the California Supreme Court has stated that although a rest period of ten minutes in length imposes a practical limitation on an employee's movement—during the rest period "an employee

generally can travel at most five minutes from a work post before returning to make it back on time"—such a constraint is not sufficient to establish employer control because it is a function of the duration of the rest break and "common to all rest periods." *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 270 (2016). On the other hand, the court noted that an employee who is forced to remain on-call during a 10-minute rest period may be subject to an employer's control. *Id.* (citing *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000)). Not only could being on-call require an employee to "remain vigilant," it may prevent the employee from "tak[ing] care of other personal matters that require truly uninterrupted time." *Augustus*, 2 Cal. 5th at 270.

The Court is not insensitive to the hardships experienced by class members. Class members may travel for long distances, for example, and the fact that they may only be off duty for ten hours at a time could make it impractical for them to go home, especially if they live more than five hours away. But the geographic constraints Plaintiffs complain of, like those inherent in a ten minute rest break, arise primarily as a consequence of practical realities and not Defendant's exercise of control. Defendant has not as a matter of policy imposed a geographic limit on the distance that class members can travel while off duty—such a limitation is common to the off-duty periods of all employees who work far from home. And unlike employees who remain on-call, class members who are off-duty retain the freedom to use their time for their own purposes without the need to "remain vigilant" and without the fear of being interrupted.

Plaintiffs nevertheless suggest that Defendant could alleviate the geographic constraints class members face by permitting them broader use of company trucks for personal conveyance, especially since alternative means of transportation are not always readily available.  (Opp'n at 15-16.)  Defendant's ability to improve its drivers' use of off duty time, however, does not give rise to a duty to do so.  Moreover, because Defendant is under no obligation to allow the use of its trucks for personal use, it follows *a fortiori* that to the extent Defendant does allow the use of its trucks for personal use, it is free to restrict that use in whatever way it sees fit.  The Court therefore concludes that Defendant's personal conveyance policies do not by themselves convert class members' "off duty" and "sleeper berth" hours into "hours worked."

### 4.   Passenger, Pets, and Alcohol

Defendant prohibits its drivers from having unauthorized passengers, pets, or alcohol in their trucks.  (Plaintiffs' SUF Nos 41, 45, 49; Defendant's SGI Nos. 41, 45, 49.)  Plaintiffs argue that these restrictions on "nonemployee visitors, pets, and alcohol use" are relevant to determining control.  (Opp'n at 16 (quoting *Mendiola*, 60 Cal. 4th at 841)).

In *Mendiola*, the primary case on which Plaintiffs rely, the California Supreme Court held that an employer exercised control over its security guard employees by requiring them to reside in trailers and spend on-call hours in the trailers or elsewhere at the worksite.  *Mendiola*, 60 Cal. 4th at 841.  The *Mendiola* court then went on to note that the employer "exerted

control in a variety of other ways," for example, by placing restrictions on "nonemployee visitors, pets, and alcohol use." *Id.*

*Mendiola* is distinguishable from the present case.  Workplace restrictions on nonemployee visitors, pets, and alcohol use were relevant in *Mendiola* because the employees were confined to the workplace. Defendant's drivers, by contrast, are not confined to their trucks when they are off duty.  Restrictions on who or what class members may bring into their trucks are therefore much less pertinent to the question of control. Defendant's rules are less like those in *Mendiola*, and more "analogous to ordinary rules on virtually every employer's premises that employees must respect at all times, even when not getting paid."  *Griffin v. Sachs Elec. Co.*, 390 F. Supp. 3d 1070, 1089 (N.D. Cal. 2019), aff'd, 831 F. App'x 270 (9th Cir. 2020).  In *Griffin*, the district court held that prohibitions against "bringing visitors" and "smoking" on the employer's property did not amount to control, even though employees were subject to those restrictions for unpaid time spent travelling across the employer's property when commuting to and from the work zone.  *Id.*  Here, too, Defendant's restrictions on visitors, pets, and alcohol do not amount to control, even if Defendant's drivers are subject to such restrictions in the brief time before or after they go on duty, or for the longer periods of time when they choose to voluntarily remain in Defendant's trucks.

Plaintiffs also challenge Defendant's policy of prohibiting its drivers from consuming alcohol within the 12 hours prior to being "on duty."  (Opp'n at 18.)  Although Plaintiffs recognize the need for drivers to be sober before

driving, they contend that Defendant's alcohol policy is stricter than required by government regulations.  (*Id.*)  The question of control, however, is separate from the question of compliance with government regulations.  An employer exercises control when it "prevents [an] employee from using . . . time effectively for his or her own purposes."  *Morillion*, 22 Cal. 4th at 583.  An employer does not exercise control simply by requiring of its employees more than what the government does.

"[A]n employer may place some constraints on an employee[]," but "control exists if the employer goes too far."  *Ridgeway*, 946 F.3d at 1078.  In analyzing whether Defendant's 12-hour alcohol policy goes "too far," the Court finds *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508 (2009) instructive.  In *Gomez*, the plaintiffs were medical service representatives who were required to carry a pager or cell phone after their regular work hours so that they could respond to patient phone calls at night or on the weekend.  *Id.* at 512.  During these on call hours, the plaintiffs were "were prohibited from consuming alcohol."  *Id.* at 512-13.  The court nevertheless held that the portion of the plaintiffs' on-call time not actually spent responding to calls was not compensable.  *Id.* at 522-24.  Although the plaintiffs could not consume alcohol, their employer "did not impose an on-site living requirement, and did not impose excessive geographic restrictions."  *Id.* at 524.  Moreover, the court determined that "[t]he time limits set for plaintiffs' response to pages—30 minutes to respond by telephone and two hours to respond to a patient's home—[were] not unduly restrictive."  *Id.*

Defendant's alcohol policy is less restrictive than the on-call policies in *Gomez*. While the employer in *Gomez* prohibited its employees from consuming alcohol for the weekend preceding their regular weekly shifts, Defendant only requires its drivers to abstain from alcohol for the 12 hours prior to going on duty. If the *Gomez* alcohol restrictions do not rise to a level of control requiring compensation, neither do Defendant's shorter duration restrictions.

Plaintiffs nevertheless assert that Defendant's alcohol policy cannot be considered in isolation. (Opp'n at 9-11.) Even so, the cumulative policies that Plaintiffs point to, excluding those relating to high value loads and high theft areas, do not amount to control under California law. Aside from Defendant's 12-hour alcohol policy, none of the other policies that Plaintiffs cite dictate how class members' should use their "off duty" and "sleeper berth" time. Class members may sometimes be prohibited from consuming alcohol, but like the plaintiffs in *Gomez*, they are "otherwise free to engage in any activities desired." *Gomez*, 173 Cal. App. 4th at 513. Plaintiffs contend that the "critical difference" between the class members in this case and the plaintiffs in *Gomez* is that the class members here cannot spend their unpaid time at home. (Opp'n at 11.) As the Court has already explained, however, the barriers preventing class members from going home arise from the practical realities of their job, and not from Defendant's exercise of control.

**B.   29 C.F.R. § 785.22**

29 Code of Federal Regulations section 785.22 states that "[w]here an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked."  29 C.F.R. § 785.22.  Plaintiffs argue that under section 785.22, "truck drivers on tours of duty must be paid for at least 16 hours per 24-hour period."  (Opp'n at 19.)

Assuming for the sake of argument that section 785.22 applies to this case, it does not say what Plaintiffs claim.  Section 785.22 allows the exclusion of up to 8 hours from "hours worked."  It does not require compensation for time that does not meet the definition of "hours worked." The Court therefore finds Plaintiffs invocation of section 785.22 perplexing, since any application of that section would be detrimental to Plaintiffs' case. Under the relevant wage order, Defendant must pay class members for *all* "hours worked."  Cal. Code Regs. tit. 8, § 11090, subd. 4(B).  Under section 785.22, Defendant could withhold payment for some "hours worked," per the parties' agreement.  In any case, as neither Defendant nor Plaintiffs have provided evidence of an agreement to exclude meal periods or sleeping periods from "hours worked," section 785.22 has no effect.

Plaintiffs' reliance on *Julian v. Swift Transportation Co. Inc.*, 360 F. Supp. 3d 932, 947 (D. Ariz. 2018) is misplaced.  (*See* Opp'n at 19-22.)  In *Julian*, the defendant employer required its truck driver trainees to participate in four to six weeks of behind-the-wheel training.  *Julian*, 360 F.

Supp. at 937.  During this time, trainees were paired with mentors, and "[e]ach trainee and his mentor worked as a driving team, meaning one individual drove while the other rested."  *Id.*  The court applied section 785.22 to hold that for the 24-hour periods where a trainee was "on duty," their employer could "deduct no more than eight hours per day as time Plaintiffs were allowed to sleep."  *Id.* at 944-52.

Implicit in the court's decision was a determination that trainees were "on duty," and subject to their employer's control, even for the periods during which they slept.  The parties did not appear to argue otherwise, and the facts of the case support that conclusion.  The trainees described their trucks as "moving almost 24/7."  *Id.* at 937.  They were therefore required to sleep in their trucks, even while the trucks remained in motion.  In those circumstances, for every 24-hour period the trainees were subject to their employer's control, the trainees were entitled to at least 16 hours of compensation.

The Court agrees with Plaintiffs that for every 24-hour period that the class members in this case were subject to Defendant's control, they are entitled to at least 16 hours of compensation.  In fact, absent an agreement stating otherwise, they would be entitled to exactly 24 hours of compensation.  Unlike the trainees in *Julian*, however, Plaintiffs have failed to show that class members were subject to their employer's control 24 hours per day for every day that they were on a tour of duty.  The Court therefore rejects Plaintiffs' assertion that Defendant owes its drivers "pay for at least 16 hours per 24-period during a driver's tour of duty."  (Opp'n at 19.)

23

**C.  Rule 56(d)**

Federal Rule of Civil Procedure 56(d) allows the Court to defer consideration of a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  "[T]he denial of a [Rule 56(d)] application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists."  *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).

Plaintiffs ask the Court to delay consideration of the present Motion so that they can conduct additional discovery.  They note that the Court has set September 30, 2023 as the discovery cut-off date and December 11, 2023 as the last day for hearing non-discovery motions.  (Opp'n at 31 (citing Doc. No. 101).)  In the next six months, Plaintiffs anticipate being able to find evidence showing that:

1.  Class members must get approval to receive "home time," and that requests for "home time" are not granted automatically.
2.  Defendant has records showing, for each driver, whether time marked "off duty" was also "home time."
3.  Class members may have found it difficult to utilize Defendant's "secure locations" when carrying a high value load or when driving through a high theft area.

24

4.   Defendant had other reasons for implementing its alcohol and

passenger policies besides compliance with government regulations.

(Opp'n at 25; Piller Decl. ¶¶ 17-22.)

Although the discovery cut-off date has not yet passed, this action has

been pending for over four years and Plaintiffs have had ample time to

procure the evidence they need to support their claims.  Moreover, even if

Plaintiffs could obtain the abovementioned evidence prior to the discovery

cut-off date, the evidence would not alter the Court's analysis of the present

Motion.  First, in considering the Motion, the Court has already accepted

Plaintiffs' assertion that class members must obtain approval from

Defendant to receive "home time."[2]  Second, the Court's rejection of

Plaintiffs' claim that all "off duty" time that is not also "home time" constitutes

"hours worked" obviates the need to differentiate between "off duty" time

and "home time."  Third, the question of whether class members found it

difficult to use Defendant's "secure locations" is subordinate to the question

of whether class members actually used Defendant's "secure locations."

The Court has already determined that class members who spend time near

their trucks pursuant to Defendant's high value load and high theft area

---

[2] At the hearing, Plaintiffs stated that they planned to take the deposition of
David Tillman ("Tillman"), one of Defendant's recently disclosed witnesses,
and that they anticipate Tillman's deposition testimony will shed light on
whether Defendant prohibits class members to go home while not on "home
time."  The Court declines to defer consideration of the Motion so that Plain-
tiffs can take Tillman's deposition.  Plaintiffs already had the opportunity to
produce similar evidence through their own or other class members' depo-
sition testimony and have not done so.  In fact, Plaintiff Bouissey's deposi-
tion testimony suggests that a request for "home time" is, as Defendant's
assert, a request to be routed home.  (Doc. No. 110-9, at 152:1-2 ("I defi-
nitely would call to be routed back home").)

policies while not parked at a "secure location" are entitled to compensation for that time.  Fourth, Defendant's motivation for implementing its policies is irrelevant to the real issue in this case, *i.e.*, whether Defendant's implementation of its policies amount to an exercise of control.  The Court therefore declines Plaintiffs' request to defer consideration of the Motion.

## VI.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.  The Court DENIES the Motion with respect to Plaintiffs' claims to the extent that the claims are based on Defendant's high value load and high theft area policies.  The Court GRANTS the Motion with respect to Plaintiffs' claims to the extent that they are based on Defendant's other policies.

**IT IS SO ORDERED.**

Dated:    4/4/23

_____
Virginia A. Phillips
Senior United States District Judge

United States District Court
Central District of California